Filed 4/24/12  Tormey v. The Vons Companies CA4/1
Received for posting 8/27/14

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DONALD J. TORMEY, | D057912 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2007-00069418-CU-OE-CTL) |
| THE VONS COMPANIES, INC., et al., | |
| Defendants and Respondents; | |
| DENNIS HUGHES et al., | |
| Objectors and Appellants. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Joan Lewis, Judge.  Reversed and remanded with directions.

Appellants Dennis Hughes and Robert C. Wieck (collectively objectors) appeal

from an order approving the settlement and judgment of dismissal of a class action

lawsuit filed by plaintiff and respondent Donald Tormey against defendants and

respondents the Vons Companies, Inc. (Vons) and Safeway, Inc. (Safeway). Objectors challenge the trial court's final approval of the class settlement as premature and thus reversible per se on due process grounds, or so prejudicial as to require reversal. They further contend the order should be vacated as a result of class counsel's conflict of interest, as well as the misleading and inadequate notice to the class. Finally, objectors urge reversal is required because the court exceeded its authority in dismissing the action with prejudice.

We conclude the trial court in the first instance should pass on objectors' arguments relating to the strength of the defense of federal preemption under section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a) (hereafter section 301 preemption), which defendants applied in supplemental briefing to present for the first time calculations significantly lessening the valuation of Tormey's case. We reject objectors' arguments as to class counsel's conflict of interest, and their challenge to the adequacy of notice to the class. Because we reverse and remand for further proceedings on final approval of the class action settlement, we need not reach objectors' contentions regarding dismissal of the action with prejudice other than to point out that class settlement provisions of the California Rules of Court preclude dismissal of the action "at the same time as or after entry of judgment." (See Cal. Rules of Court, rules 3.769(h), 3.770(a).)

FACTUAL AND PROCEDURAL BACKGROUND

In June 2007, Tormey, a pharmacist, filed a class action complaint in the San Diego Superior Court against his employer Vons and Vons's parent company, Safeway.

2

Tormey alleged defendants failed to provide rest and meal periods to pharmacists who were non-exempt employees, in violation of Labor Code sections 201, 204, 226.7 and Industrial Welfare Commission (IWC) wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040) and that the violations constituted unlawful activity prohibited by the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200, et seq.). Among other relief, he sought damages, injunctive and declaratory relief, and restitution. Defendants answered the complaint in August 2007. Tormey commenced discovery about four months later, serving sets of form and special interrogatories and a request for documents. Defendants later took Tormey's deposition. Counsel for Tormey took no depositions.

In February 2008, former Vons employee Kenneth Amodeo filed a putative class action complaint in Los Angeles Superior Court (*Amodeo v. Safeway, et al.* (Super. Ct. L.A. County, No. BC385354)) assertedly containing nearly identical causes of action on behalf of licensed pharmacists employed or previously employed in California by Safeway and Vons.

In May 2008, Tormey and defendants participated in a 12-hour day of mediation before retired Superior Court Judge William Pate. Thereafter, they reached a classwide settlement of a proposed class of hourly-paid pharmacists or pharmacy managers who worked for Vons or Safeway from June 29, 2003, to the date of the preliminary order approving the settlement. In September 2008, they executed a stipulation of settlement and release providing that defendants would jointly pay $760,000 into a fund from which a $10,000 enhancement payment to Tormey and the costs of a claims administrator would be deducted, and the claims administrator would calculate individual settlement amounts

3

under a specified formula.[1] The agreement allowed the defendants to retain unclaimed settlement funds. Defendants agreed to separately pay class counsel $200,000 in attorney fees and costs subject to court approval and payable only upon entry of an order approving the settlement and a judgment of dismissal with prejudice, and the expiration of time for any appeal from those orders.

Tormey and defendants unsuccessfully moved for an order preliminarily approving the settlement. The trial court denied the motion without prejudice, finding it had insufficient evidence to determine whether the settlement was fair, adequate and reasonable absent evidence concerning class size, the number of weeks and/or hours subject to the action, and class counsel's time and effort expended before the settlement. At the hearing on the matter, counsel for Kenneth Amodeo, Armond Marcarian, appeared to seek consolidation of the *Tormey* and *Amodeo* cases. The court invited Marcarian to file an appropriate motion.

In December 2008, respondents renewed their joint motion to preliminarily approve the settlement. They advised the court that the class consisted of approximately 1,729 individuals, the average member would receive $439.56 under the settlement, and

---

[1] The agreement provides that the claims administrator, using information received from defendants, would assign each class member a "settlement ratio:" a fractional number composed of the class member's individual workweek as the numerator, and the aggregate total of all class members' individual workweeks as the denominator. The administrator would then calculate each individual settlement amount by multiplying that member's settlement ratio with what the parties referred to as the "net settlement number," that is, the amount remaining after the deductions for Tormey and the claims administrator were made from the $760,000 fund.

4

the aggregate number of weeks worked by the putative class was 186,424. According to respondents, a class member who worked the maximum number of weeks during the applicable class period would be entitled to $1,133.33. Respondents asked the court to assess the settlement in light of the fact that defendants had obtained signed declarations from approximately 556 individuals in the putative class, approximately one-third of the class, that they claimed "completely dispose[d] of their individual claims" and also weighed heavily against class certification. According to respondents, the declarations showed class members knew they were entitled to rest breaks and meal periods under defendants' policies; they took their rest breaks and meal periods in accordance with those policies; and if any declarant failed to take a rest break or meal period, his or her failure to do so was voluntary and based on personal individualized reasons. Respondents also modified their stipulation of settlement and release to provide for mailing of the notice of the proposed settlement using mailing address information provided by the defendants, and included procedures for returned notices due to incorrect addresses.

The trial court granted preliminary approval of the settlement. However, it observed that each putative class member would be entitled to no more than $4 per week in compensation for the missed rest and meal breaks, and expressed concern that the amount did not meet a threshold showing that the settlement was adequate, fair, or reasonable. It ordered the parties to provide argument on the issue at the time of the final approval hearing, which it set for December 11, 2009.

5

In October 2009, Marcarian and the law firm of Harris & Kaufman filed a notice of intent to object to final approval of the *Tormey* class settlement on behalf of 21 individuals, including objectors. They maintained the class notice did not permit an informed decision by class members in that it lacked information from which each class member could calculate his or her individual potential recovery, and thus violated Fourteenth Amendment due process. Objectors also argued the notice included Labor Code section 1194 overtime claims and causes of action that were not within the scope of Tormey's operative complaint, and failed to mention the *Amodeo* action and the effect the settlement would have on that action, which they claimed was more developed than the *Tormey* action. They asserted the court had no data concerning the amount in controversy and realistic range of outcomes of the litigation, and the settlement was not fair, adequate or reasonable given evidence in their possession showing putative class members were denied the opportunity to take uninterrupted, duty-free, meal and/or rest breaks. Marcarian represented he had obtained evidence establishing commonality required for class certification as well as demonstrating defendants' liability for meal- and rest-break violations.

The following month, respondents jointly applied ex parte to correct errors that had caused "inaccuracies in the notice process," and sought to continue the hearing on final settlement approval. Marcarian appeared telephonically for objectors. He protested he had not received notice of the hearing, and argued respondents were improperly trying to get a "second bite at the apple" to correct their class notice, causing confusion among the putative class. The court permitted respondents to submit an amended notice as well

6

as a revised schedule for the motion on final settlement approval. The final approval hearing was eventually set for May 7, 2010.

On January 15, 2010, respondents' claims administrator served an amended claim and notice to 1,825 class members. Two months later, objectors (within a group of 26 individuals) renewed their objections to final approval of the *Tormey* class settlement. In addition to repeating their previous objections, they challenged the adequacy and comprehensibility of the amended notice, which advised class members who had already submitted a claim that they need not take further action if they agreed with the number of workweeks identified on the amended claim form. According to objectors, the amended notice invited putative class members to overlook substantive changes, including the deletion of a reference to Labor Code section 1194 overtime claims, and the addition of a reference to the *Amodeo* action. They argued removal of the overtime claims did not resolve problems of those putative class members who had sent in claims before the amended claim forms were sent, thereby releasing overtime claims they might possess. Objectors asserted the two different claim forms created a disparity in treatment among the class, rendering the settlement unfair. Objectors presented 22 declarations from the objectors as well as 14 pharmacist declarations provided by defendants in the *Amodeo* action, 36 survey responses, and four deposition excerpts from class members assertedly demonstrating the plaintiffs' case was strong on the merits; that the class members were unable to take 30-minute duty-free meal and rest breaks due to various interruptions, and some class members chose to have interrupted breaks to provide better customer service.

On April 14, 2010, respondents filed a joint motion for final approval of the

7

settlement. They asserted that discovery had revealed strong legal and factual defenses to liability, including federal preemption under section 301 by virtue of the fact Vons's pharmacists were members of the United Food and Commercial Workers' Union (UFCW), whose terms and conditions of employment were governed by a collective bargaining agreement with detailed provisions for one-hour lunch periods, 10- and 15-minute rest periods, and in some cases, fully paid on-call meal periods. Respondents stated Tormey had admitted he was subject to Vons policies and procedures requiring employees to properly record all time worked and take required lunch hours and breaks. They further stated defendants had obtained 554 sworn declarations from pharmacists largely explaining that they took their meal periods and rest breaks as expected or instructed, and had never been told to skip those breaks. Respondents pointed out they had reached a compromise after a full day of mediation and had concluded the risks warranted the settlement. They asserted only 33 of 1,825 class members had opted out and only one objection had been filed: that of the 26 class members represented by the *Amodeo* attorneys. In part, respondents argued the settlement was adequate because it accounted for the legal weaknesses of the case and the strengths of the defenses.

On April 30, 2010, defendants separately filed a response to objectors' papers, including evidentiary objections to the declarations objectors had submitted. Defendants argued objectors had not challenged the settlement on grounds it was a product of fraud or collusion and they had not sufficiently rebutted the presumption of fairness arising where the settlement is reached through arms-length bargaining, investigation and discovery are sufficient to allow counsel and the court to act intelligently, counsel is

8

experienced in similar litigation, and the percentage of objectors is small. They argued the settlement value was generous given the state of the law, including federal authorities decided after the settlement affirming that meal and rest break claims were not generally subject to class treatment. Defendants reiterated that Tormey's claims were subject to a total preemption defense because they "inherently require[d] interpretation of the [collective bargaining agreement] . . . ." They asserted the class notice was full and complete, and disputed the objectors' claims as to its insufficiency. Defendants argued the settlement was reasonable given their strong legal and factual defenses and that objectors' remedy was to opt out if they disputed the settlement amount's adequacy.

On May 7, 2010, the trial court issued a tentative ruling denying final approval of the settlement. Noting the law was unsettled and under review by the California Supreme Court,[2] the court asked the parties for evidence demonstrating the value of the case to Tormey should the law support his claims, that is, the potential dollar amount of those claims. It expressed concern about its ability to conclude sufficient discovery had been conducted before the parties reached their settlement. Finally, the court observed that while the notice contained a calculation, it did not appear to allow class members to easily determine the value of the settlement to them.

---

[2]     In part, the court cited *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949 and *Brinkley v. Public Storage, Inc*. (2008) 167 Cal.App.4th 1278, review granted Jan. 14, 2009, S168806. Both cases involve issues now resolved by the California Supreme Court in *Brinker Restaurant Corp. v. Superior Court* (Apr. 12, 2012, S166350) ___ Cal.4th ___. We express no opinion concerning *Brinker*'s impact on the present case.

The parties argued the matter, with Marcarian and two additional attorneys appearing telephonically for objectors. Tormey's attorneys, Michael Ian Rott and Eric Overholt of Hiden, Rott & Oertle, LLP first addressed the trial court's concerns. They argued the formula provided in the notice was sufficient to allow each class member to calculate their dollar figure, and the law did not require them to include a dollar figure. Rott and Overholt recounted the informal and formal discovery they and their firm had conducted, which had allowed them to send out fliers to Vons pharmacists. Rott stated they were "shocked by the lackluster response," which, coupled with the discovery they had conducted and the 556 pharmacist declarations produced by defendants in mediation, changed the "climate" of the case. Counsel for defendants addressed the absence of class member depositions. He acknowledged plaintiffs usually took a representative sample of depositions, but asserted defendants had obtained declarations from 99 percent of all of the pharmacists they currently employed so as not to "cherry pick." He pointed out the Vons pharmacists were subject to a collective bargaining agreement setting up a paid on-duty meal period, countering the objectors' complaints that the declarants had not asserted their meal periods were duty free. He pointed out the Safeway pharmacists stated in their declarations that they did not work during their meal or rest periods. Tormey's counsel described possible ranges of settlement outcomes given different factual scenarios of the number of missed rest and meal breaks, reflecting ranges from over $57.2 million if plaintiffs missed every single meal period, to $1.4 million if one half of the class missed

10

one meal and rest period each month.[3]  Counsel for both Tormey and Vons stressed their doubts as to whether plaintiffs could meet commonality requirements.

Marcarian, for objectors, advised the court that he agreed the value of the case was at least $60 million and maintained the $760,000 was a token settlement in view of the extensive formal discovery he had conducted.  He represented that "a lot" of pharmacists informally stated they felt compelled to sign defendants' declarations or risk their employment.  He stated he and his colleagues had taken eight to ten depositions of randomly chosen class members, deposed two upper managers, and conducted surveys in which about 40 pharmacists reported they did not take duty-free breaks or a 10-minute rest break.  Marcarian complained the notice did not include any individual settlement estimate and posited that respondents did not want class members to focus on the low individual recovery amounts.  He represented that his co-counsel was able to negotiate much higher settlements for other retail pharmacists.

Following arguments, the court took the matter under submission.  However, it allowed supplemental briefing to be filed by respondents no later than 30 days from the hearing date, and by objectors no later than 15 days from the date of service of

---

[3]    Counsel for Tormey represented that they had arrived at an average wage of $46.17, and stated if they took the total workweeks (229,129) and multiplied it by $50 per day, the total figure for 100 percent missed meal breaks would be over $57,282,250.  If everyone in the class missed one meal and rest period per week, it would be "roughly" $11 million.  If one-half of the class missed only one week or one meal period per week, the number would be approximately $5.7 million.  If one-half of the class missed one meal and one rest break per month, the figure would be over $1,432,056.25.  He argued the $766,000 guaranteed some money for the class in the face of substantial risk and costs of litigation and large procedural hurdles of class certification.

11

respondents' supplemental briefing. The court specified that the briefing was limited to providing support for statements made at the hearing.

Respondents filed their supplemental briefs on June 4, 2010. Tormey included a breakdown of the potential recovery amounts based on a $46.17 average hourly wage taken from the UFCW Local 135 contract from 2004 to 2007. Attorney Rott represented in a supporting declaration that his law firm's connections with the UFCW allowed him to conduct a substantial amount of informal discovery, including by obtaining from the UFCW a copy of the collective bargaining agreement (the UFCW, Locals 135 "Retail Food and Meat Agreement") covering Vons's pharmacists, and a store list for various regions in the state of California. He stated that the collective bargaining agreement provided the pharmacists with paid "on-call" meal and rest periods. Rott had met with UFCW representatives and reportedly learned the Safeway pharmacists in San Francisco were receiving their uninterrupted meal and rest periods. In October 2007, the UFCW Local 136 distributed and posted a flyer in break rooms for Vons's pharmacists to contact Rott's law firm if they had missed or had questions regarding meal and rest periods. Rott stated Tormey served special interrogatories on January 11, 2008, and a request for production of documents on January 22, 2008, receiving 1169 pages of documents in March 2008 including an internal summary of policies and procedures and separate pharmacy policies and procedures. Defendants took Tormey's deposition on May 8, 2008, and elicited his concession that he had the ability to take a break as well as his reasons for deciding whether or not to take his break. According to Rott, Tormey's deposition confirmed concerns that had arisen as a result of their interviews with other

12

pharmacists: that every individual's experience was different, creating a " 'commonality factor' flaw."

In their supplemental brief, defendants argued the state of the law and range of outcomes demonstrated the settlement amount was fair and reasonable; they repeated there was a significant probability Tormey would not obtain class certification or recover any amount given their policies, memos and postings providing meal and rest breaks, as well as the binding union contract also providing for such breaks. They argued even if some degree of liability existed and Tormey were able to obtain class certification, the settlement amount was within the " 'realistic range of outcomes of the litigation' " taking into account the above factors and the class members' sworn testimony. For the first time, defendants presented a new damages calculation: they asserted that most potential liability scenarios resulted in an monetary outcome *lower than* the settlement amount, and that to reach a greater recovery, the court would have to make several assumptions: that the class was certified; the union-represented class members bypassed exclusive remedy provisions in their collective bargaining agreement in violation of federal law; and class members would present testimony differing radically from their sworn declarations. They illustrated their calculations in hypotheticals based on payroll and time records.[4]

---

[4]     For example, defendants stated: "Defendants' time records demonstrate that a total of 229,129 workweeks were worked (in whole or in part) by class members in the relevant time period. Liberally assuming that each workweek consisted of a full five days, there are potentially 1,145,645 workdays upon which a pharmacist could possibly have missed a meal or rest period. Of these, 55 [percent] (representing the percentage of

13

On June 10, 2010, the court issued its final order approving settlement and entered a judgment of dismissal with prejudice. It found the respondents' joint stipulation to be fair, reasonable, adequate and in the class's best interests; found the amended notice and amended claim in compliance with California Rules of Court, rule 3.769(f) and due process; and approved a $5,000 enhancement payment to Tormey, class counsel fees of $195,977.56, $4,022.44 in costs, and the payment of claims administrator expenses.

About a week later, objectors filed a "notice of premature ruling," asserting the court had issued its ruling before permitting them to file their supplemental briefing, which had been due on June 19, 2010. On July 16, 2010, the court, having reviewed the objectors' notice, issued an order vacating the judgment subject to its receipt of an objection challenging its power to do so. The order provided that if no objection were filed by August 6, 2010, the judgment would be vacated and objectors given until August

---

pharmacists who were subject to the [collective bargaining agreement]) should be disregarded because of [section] 301 preemption, leaving 515,540 opportunities for a missed meal or rest period that would fall within the jurisdiction of this Court. Defendants have established (and Objectors have not disputed) that defendants maintained policies providing meal and rest periods, and 99.5 [percent] of the pharmacists interviewed testified under oath that they were never instructed by defendants to skip any rest or meal period. . . . Applying the remaining .5 [percent] to the 515,540 workdays noted above yields roughly 2,578 'opportunities' for a missed break or meal period. Even if every pharmacist were able to prove at trial that he or she missed every such meal period, the resultant liability at an average hourly rate of $49.52 would be $127,662.56—a fraction of the amount being paid in settlement." The sole support for these figures was an attorney's declaration attesting he had supervised attorneys who interviewed and gathered declarations from nearly every current pharmacist employed by defendants in California, and that of the pharmacists interviewed, approximately 55 percent worked for Vons. He also stated based on defendants' payroll records that the average hourly rate of pay of the entire class during the relevant time period was $49.52.

14

27, 2010, to respond to respondents' supplemental papers. The court clerk, however, did not serve the order on the parties.

Objectors filed a notice of appeal on August 10, 2010. It was not until October 5, 2010, that the court advised the parties of its July 16, 2010 order. The minute order from that hearing states that the court read the order to counsel, the clerk faxed it to all counsel, and "[a]fter reviewing the order, counsel will contact the court as to how they wish to proceed."

## DISCUSSION

### I. *July 16, 2010 Order Purporting to Vacate Judgment*

Tormey argues this court may not consider matters occurring after the trial court entered its June 10, 2010 judgment; that error cannot be predicated on any matter occurring subsequent to that judgment. However, because the trial court in its July 16, 2010 order purported to vacate the judgment, raising questions as to this court's jurisdiction to consider this appeal, we asked the parties for supplemental briefing on the effect of the court clerk's failure to serve the July 16, 2010 order on the parties, and whether or not that order in fact vacated the judgment of dismissal.

We conclude the clerk's failure to mail serve the order on the parties in compliance with Code of Civil Procedure section 1013, subdivision (a), and the resulting lack of notice, rendered the order ineffective. (See *Triumph Precision Products, Inc. v. Insurance Co. of North America* (1979) 91 Cal.App.3d 362, 365 [section 1013, subdivision (a) "is applicable to the mailing by a court clerk of notice announcing the entry of an appealable judgment or order"]; *Lee v. Placer Title Co.* (1994) 28 Cal.App.4th

15

503, 510 [because notice of the court's intent to file a dismissal "was not sent to the 'office address as last given by [litigant] on any document filed in the cause,' as required by [Code of Civil Procedure] section 1013, subdivision (a), the notice was not effective" and dismissal subsequently entered was void]; *Valley Vista Land Co. v. Nipomo Water & Sewer Co.* (1967) 255 Cal.App.2d 172, 174 [clerk's mailing of notice of entry of judgment "must, in all respects, comply with the provisions of the Code of Civil Procedure relating to service by mail"]; *Dobrick v. Hathaway* (1984) 160 Cal.App.3d 913, 921 [service by mail must be made in strict compliance with the mandates of sections 1013 and 1013a].)

Thereafter, the filing of objectors' August 10, 2010 notice of appeal divested the trial court of jurisdiction to act further on the matter, including to cure defects in the June 2010 judgment. (See *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 197 [effect of appeal is to divest court of jurisdiction over subject matter of action; the court has no power to vacate or modify the judgment or even to cure any purported defect in the judgment or order appealed from]; *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938-940 [appeal precludes trial court from vacating the appealed judgment or order].) For this reason, it is immaterial that the court purported to give objectors an opportunity to advise the court how they wished to proceed concerning the prematurely entered judgment. Because the court was without jurisdiction to give them any relief, objectors were powerless to influence it to do anything affecting the judgment.

16

II. *The Court's Premature Entry of the June 10, 2010 Order and Judgment is Not*

*Reversible Per Se*

Objectors contend the trial court denied them their due process right to be heard when it prematurely entered the order approving final settlement and judgment. They maintain the error was reversible per se because the court refused to permit them to present evidence and thus deprived them of a fair hearing.

Whether a denial of fundamental due process has occurred depends on the circumstances of the particular case. (See, e.g., *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 543, citing *Mathews v. Eldridge* (1976) 424 U.S. 319, 333.) In *Southern Cal. Underground Contractors*, this court explained that due process " ' "is not a technical conception with a fixed content unrelated to time, place and circumstance." [Citation.]' [Citation.] Rather, it ' "is flexible and calls for such procedural protections as the particular situation demands." ' " (*Southern Cal. Underground Contractors*, 108 Cal.App.4th at p. 543.) As we explain, we cannot say under the present circumstances that such a fundamental due process violation occurred.

It is true that as a general proposition, failing to accord a party litigant his or her constitutional right to due process by denying that litigant a full and fair hearing is reversible per se, so no prejudice need be demonstrated. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677; *Hoffman Street, LLC v. City of West Hollywood* (2009) 179 Cal.App.4th 754, 773; *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 292, 293.) Thus, "[d]enying a party the right to testify or to offer evidence is reversible per se." (*Kelly*, at p. 677; *Carlsson*, at p. 291.)

This principle, however, is applicable where a "trial court erroneously denies *all* evidence relating to a claim, or *essential* expert testimony without which a claim cannot be proven . . . because it deprives the party offering the evidence of a fair hearing and of the opportunity to show actual prejudice." (*Gordon v. Nissan Motor Club One., Ltd.* (2009) 170 Cal.App.4th 1103, 1114; see also *Kelly v. New West Federal Savings*, *supra*, 49 Cal.App.4th at pp. 667-668, 675, 677 [trial court's in limine ruling prevented plaintiffs from pursuing the only factual theory of liability supported by the evidence]; *Fewel v. Fewel* (1943) 23 Cal.2d 431 [reversal required for trial court's refusal in a child custody proceeding to consider any parties' affidavits or permit the plaintiff the right to produce evidence and cross-examine adverse witnesses]; *In re Waite's Guardianship* (1939) 14 Cal.2d 727 [reversal required where court refused to allow the alleged incompetent to testify in a guardianship proceeding, where evidence showed she was of sound mind and qualified to testify]; *Hoffman Street, LLC v. City of West Hollywood*, *supra*, 179 Cal.App.4th 754, 773 [error was reversible per se when court entered judgment on several counts in petition for writ of mandate without conducting hearing on the merits of those counts and absent any dispositive motion as to them]; *In re Marriage of Carlsson*, *supra*, 163 Cal.App.4th 281 [trial court's arbitrary termination of presentation of evidence during husband's case in chief and while expert witness was on the stand denied husband his constitutional right to a fair hearing, and required reversal without an assessment of actual prejudice]; *Adoption of Baby Girl B.* (1999) 74 Cal.App.4th 43, 51-52 [reversal required where prospective adoptive parent was denied an evidentiary hearing before adoptive placement was terminated; such parent had both a constitutional right to notice

and a full hearing and a statutory right to an evidentiary hearing]; *Caldwell v. Caldwell* (1962) 204 Cal.App.2d 819 [reversal required where court refused to hear wife's testimony as to child's needs in a child support modification proceeding].)

Here, objectors invoke these principles, arguing class members have a due process interest in expressing their views to the court, and must be afforded an opportunity to " 'make the [c]ourt aware of any undisclosed inadequacies.' "  They correctly point out the purpose of a settlement hearing is to insure the opportunity for all relevant facts and objections to be placed before the trial court so it has sufficient facts to intelligently evaluate the settlement proposal.  But objectors did in fact appear by counsel, both at the preliminary approval and final approval hearing, and they were given the opportunity to, and did, present written arguments expressing their objections to the proposed settlement terms.  "The erroneous denial of some but not all evidence relating to a claim [citations] differs . . . .  In [that] situation, the appellant must show actual prejudice . . . ."  (*Gordon v. Nissan Motor Club One., Ltd.*, *supra*, 170 Cal.App.4th at p. 1115.)  The court's approval of the settlement and entry of judgment before objectors' deadline to file supplemental briefing did not deprive objectors from presenting *all* argument or evidence in support of their positions, just evidence they believed rebutted or contradicted the statements or assertions made by respondents at the final approval hearing.

Objectors have not provided us with authority for the proposition that, in this factual context, where they had notice of the arguments made by counsel prior to and during a hearing in which they participated, their inability to provide additional briefing invited on those points violated fundamental constitutional due process rights in such a

19

way to render the trial court's premature entry of judgment reversible per se. None of the authorities on which objectors rely present such factual circumstances.

III. *Reversal is Nevertheless Required To Permit the Trial Court to Conduct an Informed and Independent Assessment of the Settlement's Fairness*

However, we are persuaded by objectors' alternative contention that they were prejudiced by the court's premature entry of the order and judgment. They point out respondents' supplemental papers urged the court to disregard, or discount to zero, 55 percent of the value of Tormey's claims due to Vons's federal preemption defense, and relied on federal district court authority (*Brown v. Federal Express Corp.*, *supra*, 249 F.R.D. 580) to argue the remaining discounted value of the case was little if any. Objectors argue they were unfairly denied the opportunity to respond with relevant arguments and authorities that would significantly affect the court's valuation of the case.

In support, objectors set forth the legal arguments they would have made to the trial court. They argue defendants' assertion of a federal preemption defense is untenable; that California statutory meal and rest break claims are based on fundamental state rights that cannot be bargained away by a private collective bargaining agreement. According to objectors, any purported waiver of duty-free breaks in the bargaining agreement directly conflicts with California public policy (reflected in Labor Code sections 850 through 853, as well as California Code of Regulations, title 16, section 1714.1) restricting the working hours of retail pharmacists, mandating days of rest, and ensuring pharmacists' ability to have duty-free breaks and meal periods. Objectors contend the court had an obligation to pass on whether a legitimate controversy existed on these legal

20

points in its fairness evaluation, and without doing so it did not consider the strength and considerable value of Tormey's class claims, requiring reversal as in *Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785 (*Clark*).

When a class action settlement has been reached, the trial court bears the responsibility of ensuring that the recovery represents a reasonable compromise, and in so doing, the court has a fiduciary responsibility as guardian of the rights of absent class members. (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129 (*Kullar*) ; see *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1150 (*7-Eleven*).) "Although '[t]here is usually an initial presumption of fairness when a proposed class settlement . . . was negotiated at arm's length by counsel for the class, . . . it is clear that the court should not give rubber-stamp approval. . . . Rather, . . . the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.' [Citation.] 'To make this determination, the factual record before the . . . court must be sufficiently developed.' [Citation.] . . . 'The proposed settlement cannot be judged without reference to the strength of plaintiffs' claims. "*The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.*" ' [Citation.] The court 'must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case,' but nonetheless it 'must eschew any rubber stamp approval in favor of an independent evaluation.' " (*Kullar, supra*, 168 Cal.App.4th at p. 130, emphasis added.) In this process, the parties must provide "a meaningful and substantiated explanation of

21

the manner in which the factual and legal issues have been evaluated." (*Id*. at pp. 132-133.) The court must have "basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." (*Id*. at p. 133.)

Our inquiry on appeal, of course, is not whether the *Tormey* class settlement terms are "fair, adequate and reasonable . . . ." (*Kullar*, *supra*, 168 Cal.App.4th at pp. 127-128; *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 407-408; *Dunk v. Ford Motor Club One.* (1996) 48 Cal.App.4th 1794, 1801.) That is a question for the trial court in the first instance. (*Nordstrom Com'n Cases* (2010) 186 Cal.App.4th 576, 581 [appellate court's task is not to make an independent determination whether the terms of the settlement are fair, adequate and reasonable, but to determine only whether the trial court acted within its discretion]; *Kullar*, at pp. 127-128 [same]; *Munoz*, at p. 407 [same]; *Dunk*, at p. 1802 ["We will not 'substitute our notions of fairness for those of the [trial court] and the parties to the agreement' "].) Nor are we required to pass on the merits of defendants' preemption defense. (*7-Eleven*, *supra*, 85 Cal.App.4th at p. 1146 [appellate court does not have " 'the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute,' " and " ' "need not reach any dispositive conclusions on the admittedly unsettled legal issue" ' "]; see also *Clark*, *supra*, 175 Cal.App.4th at p. 803.) We decide only whether objectors have demonstrated prejudice resulting from their inability to submit briefing in response to respondents' supplemental showing; whether, absent the information objectors say they would have provided, the court was without sufficient

22

information to conduct an independent and objective analysis of the circumstances so as to satisfy itself that the settlement was fair, adequate and reasonable to the class.

Here, the trial court was poised to deny final approval, apparently unconvinced by respondents' papers seeking final approval and feeling it lacked sufficient information to decide the $760,000 settlement was fair and reasonable. Its invitation for additional briefing sought a response from objectors as to counsel's calculations assuming the merit of the class claims. As Tormey acknowledges, the additional information was intended to "memorialize the potential [settlement] ranges and the strengths and weaknesses in writing . . . ." Yet, objectors were precluded from presenting argument on the preemption defense in response to defendants' new assertion in their supplemental papers that the defense rendered the majority of class members' claims worthless, and that all reasonable settlement ranges would come in *lower* than the proposed $760,000. Objectors are entitled to " ' "meaningful participation" ' " in the settlement proceedings, and " ' "leave to be heard . . . ." ' " (*Hemphill v. San Diego Association of Realtors* (S.D.Cal. 2004) 225 F.R.D. 616, 619.) In this respect, the fundamental question again is whether the judge overseeing settlement approval "has sufficient facts before him [or her] to intelligently approve or disapprove the settlement." (*Hemphill*, at pp. 619-620.)

In *Clark*, the appellate court explained that "the trial court [considering the fairness of a class settlement] is obliged, at a minimum, to determine whether a legitimate controversy exists on a legal point, if that legal point significantly affects the valuation of the case for settlement purposes." (*Clark*, *supra*, 175 Cal.App.4th at p. 803.) There, the trial court did not set forth a " 'substantiated explanation' " of the manner in which it

23

evaluated a core legal issue (the method of calculating overtime), but rather "simply accepted class counsel's conclusion the overtime claim had 'absolutely no' value . . . ." (*Ibid*.) The *Clark* court held the trial court thus "lacked a sufficient basis to 'satisfy itself that the class settlement is within the "ballpark" of reasonableness' [citation], and therefore abused its discretion in approving the settlement." (*Ibid*.)

We conclude the trial court could not make the required independent and objective evaluation without considering the additional points raised by objectors in passing on the settlement so as to reach an informed, just and reasoned decision. This result is compelled not only by the trial court's fiduciary obligation to the class, but also by the fact that objectors were not given an opportunity to challenge defendants' supplemental valuation calculations based on the preemption defense, which discounted over half of the *Tormey* class claims and thus had a substantial effect on the potential total recovery. As in *Clark*, the trial court's order granting final approval did not contain an analysis of the legal and factual issues presented concerning the merits or value of the class claims. (*Clark*, *supra*, 175 Cal.App.4th at p. 801 [court's order granting final approval, "while finding the settlement was 'the product of serious, informed, non-collusive negotiations' and was 'fair, reasonable and adequate,' gives no hint as to the court's 'independent assessment of the adequacy of the settlement terms' "].) It is unknown whether the court was ultimately persuaded by defendants' assertion that a reasonable valuation calculation, in view of the preempted claims, was well below the $760,000 settlement amount. Absent consideration of objectors' position on the merits of the preemption defense underlying defendants' newly presented settlement calculations, we are not convinced the

24

trial court had before it all information that would be helpful to assist it in determining the strength of the class claims on the merits, a critical consideration in assessing whether the settlement terms are fair, reasonable and adequate to the class. Accordingly, we vacate the judgment and remand with directions that the court reconsider the fairness and adequacy of the settlement after considering objectors' responsive federal preemption arguments.

## IV. *Class Counsel's Purported Conflict of Interest*

Objectors further contend they were unable to present argument to the trial court that class counsel, Rott and his law firm Hiden, Rott & Oertle, LLP, operated under a "per se" disqualifying conflict of interest due to their simultaneous representation of the UFCW and the settlement class. They maintain that as a result of his conflicting representation, Rott violated his duty of loyalty by "blindly" discounting potential class claims as a result of the collective bargaining agreement, and also misrepresented state and federal law in a manner adverse to his clients' interest, demonstrating inadequacy and incompetence as class counsel. Objectors ask us to vacate the judgment with directions that the trial court deny final approval of the class with prejudice, on grounds Rott and his firm are inadequate representatives and per se disqualified from representing the class.

We need not decide whether simultaneous or dual representation of the UFCW and its members is a disqualifying conflict of interest. As Tormey points out, objectors' conflict claims are based on an erroneous factual premise. Rott did not state in his supplemental declaration that he represented the UFCW, only that he represented UFCW *members* in San Diego and Imperial Counties. Because objectors' conflict claims are

25

based on the factual premise that Hiden, Rott & Oertle, LLP presently represent the UFCW or did so while also representing UFCW members during these proceedings, we reject them on the basis that the claims are not supported by the record.

V. *Class Notice*

Though we remand for a further hearing on the class settlement's final approval, we nevertheless address objectors' contention that inadequacies and omissions in the January 2010 amended notice of the class settlement render the notice insufficient to permit an adequate basis for informed decision-making and violate class members' due process rights. Specifically, objectors argue the amended notice inaccurately describes the differences between it and the original class settlement notice by stating the "primary differences" are merely the new hearing date and the number of workweeks, thus lulling class members into believing they merely needed to verify their workweeks and failing to draw attention to the original deficiencies (the deletion of overtime claims and addition of a reference to the *Amodeo* action). They argue the amended notice does not permit any class member to make an informed decision because the notice does not include that individual member's settlement amount, but only a "confusing and ambiguous formula . . . ." Finally, pointing out settlement class members were not required by the amended notice to sign and return an amended claim form, objectors assert the use of different claims caused some members who used the original claim form to release overtime claims, and created an intra-class disparity " 'not rationally based on legitimate considerations' " that is a prima facie indication of unfairness.

26

1. *Review Standard*

The parties dispute the applicable standard of review.  Objectors argue this court independently reviews the content of the notice for its adequacy and clarity.  Defendants argue the trial court has "virtually unfettered discretion" regarding the notice's contents, suggesting we apply the deferential abuse of discretion standard.

We conclude de novo review applies to the question of whether the content of the class settlement notice is legally sufficient and satisfies due process; whether the notice " ' "fairly apprise[s] the class members of the terms of the proposed compromise and of the options open to dissenting class members." ' "  (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 746, citing *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 251; see also *in re Cellphone Fee Termination Cases* (2010) 186 Cal.App.4th 1380, 1390.)  The authority relied upon by defendants, *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, presented a challenge to the settlement notice procedure, and the *Martorana* court cites *7-Eleven*, *supra*, 85 Cal.App.4th at page 1164, which refers to the trial court's "virtually complete discretion" as to the *manner* of notice. (*Martorana*, 175 Cal.App.4th at p. 694.)  *Martorana*'s unsupported dicta is not a definitive statement of the standard of review for due process challenges or challenges to the adequacy of a class action notice's contents.

2. *The Notice Satisfies Due Process*

Having reviewed the content of the original and amended notices, we perceive no due process violations.  The amended notice begins with the following capitalized statement:  "Attention:  Former and current hourly paid pharmacists or pharmacy

27

managers of the Vons Companies, Inc. or Safeway Inc. employed between June 29, 2003 and June 12, 2009; this is an amended notice.  Please read it carefully <u>even if you have already read and/or responded to a prior notice regarding this action</u>."  (Capitalization omitted.)  The notice identifies the claims, sets forth the date of the final settlement approval hearing, and sets forth the class members' options in either submitting a claim, excluding themselves from the settlement, or objecting to the settlement.  It summarizes the effect of the settlement and specifies the "released rights and claims," specifying that upon final approval, each class member would waive his or her right to participate in the *Amodeo* action.

The amended notice has none of the procedural deficiencies presented in *Mullane v. Central Hanover Bank & Trust Club One.* (1950) 339 U.S. 306 or *Pillsbury v. South Coast Regional Com.* (1977) 71 Cal.App.3d 740, relied upon by objectors.  *Mullane* held court-ordered publication for four successive weeks constitutionally defective as to known persons whose whereabouts were also known; the notice was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  (339 U.S. at pp. 314; see also *id.* at p. 315 ["The means [of notice] employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it"].)  The appellate court in *Pillsbury* held an administrative regulation for "written public notice" to persons affected by a coastal development was not satisfied by one posting on a fence obscured by a large bush and trash container on the site of the proposed development, and neither that notice nor postings on nearby public buildings would satisfy due process

28

under *Mullane*'s principles because neither was reasonably likely to reach the nearby residents, who were the most affected. (*Pillsbury v. South Coast Regional Com.*, at pp. 750, 753.) Objectors cite no authority for the proposition that a class settlement notice otherwise containing the information required by the California Rules of Court[5] violates such due process principles for failing to identify the differences between it and any prior settlement notice.

Nor can we conclude the notice fails to provide an adequate basis for an informed decision by the class members. A class action settlement notice should present information neutrally, simply, and understandably. (*7-Eleven*, *supra*, 85 Cal.App.4th at p. 1164 [notice must express no opinion on the merits of the settlement]; *Rodriquez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 962.) It should describe the aggregate amount of the settlement fund and a formula or plan for computing recoveries. (See *In re Cellphone Fee Termination Cases*, *supra*, 186 Cal.App.4th at p. 1393 [" 'The

---

5       California Rules of Court specify the contents of class notice that gives members the right to request exclusion from the class, as does the notice at issue. The notice must contain (1) a brief explanation of the case, including the basic contentions or denials of the parties; (2) a statement the court will exclude the member from the class if the member so requests by a specified date; (3) a procedure for the member to follow in requesting exclusion from the class; (4) a statement that the judgment, whether favorable or not, will bind all members who do not request exclusion; and (5) a statement that any member who does not request exclusion may, if the member so desires, enter an appearance through an attorney. (Cal. Rules of Court, rule 3.766(d).) In determining the manner of giving notice to the class, the court must consider the interests of the class; the type of relief requested; the stake of the individual class members; the cost of notifying class members; the resources of the parties; the possible prejudice to class members who do not receive notice; and the res judicata effect on class members. (Cal. Rules of Court, rule 3.766(e).) Objectors do not challenge the manner or procedure for mailing of the amended notice to the class members.

aggregate amount available to all claimants was specified and the formula for determining one's recovery was given. Nothing more specific is needed' "]; *Rodriquez*, at p. 962; *Torrisi v. Tucson Elec. Power Club One.* (9th Cir. 1993) 8 F.3d 1370, 1373-1374.) In *Torrisi*, the Ninth Circuit rejected a similar argument by objectors to a class settlement that a notice was insufficient because it "did not specify their potential recovery," where the notice clearly stated the aggregate settlement and the formula for computing awards. (8 F.3d at p. 1374.)[6] Similarly, the First District, Division Five Court of Appeal recently upheld the adequacy of a class settlement notice where the mail and long form notices identified the "total amount of the common fund recovery, the nature of the costs and fees to be deducted from the common fund, and the fact that the balance of the fund would be allocated among qualified class claims." (*In re Cellphone Fee Termination Cases*, at p. 1393; see also *id.* at p. 1392 [citing federal unpublished authorities rejecting objections to settlement notices on grounds they did not provide details about " 'actual individual settlement values' " or " 'the actual value of the settlement as to each class member' "].)

The amended notice in this case states that the defendants would jointly pay "a maximum total payment of . . . $760,000" that would be the "total gross amount to be paid by Defendants for all claims of Class Members alleged in the Action" including the

---

6      " ' "California courts may look to federal authority for guidance on matters involving class action procedures." [Citations.]' [Citation.] '[W]hen there is no relevant California precedent on point [regarding attorney fees in class actions] federal precedent should be consulted.' " (*In re Cellphone Fee Termination Cases*, *supra*, 186 Cal.App.4th at p. 1392, fn. 18.)

enhancement payment, costs of the claims administrator, interest, and penalties. The notice explains that that number, minus the enhancement payment to the class representative and claims administrator costs, would be the "net settlement number" and that individual settlement amounts would be calculated by multiplying the net settlement number with a ratio based on the member's individual workweek, divided by the total aggregate workweeks. This sort of formula is all the specificity that due process requires. (*In re Cellphone Fee Termination Cases*, at p. 1393; *Torrisi v. Tucson Elec. Power Club One*, *supra*, 8 F.3d at p. 1374.)

Finally, we are not persuaded by objectors' contention that the different release forms contained in the original and amended notices result in an intraclass disparity by which some class members have released unpleaded claims for overtime under Labor Code section 1194. Objectors provided no indication of whether any class members returned an original claim form or, if so, how many. Nor did they provide evidence any class members were in fact misled by the contents of the amended notice or the discrepancies in the original and amended notice. Objectors only state it is "quite likely" that the majority of class members opted to rest on their original claim form pursuant to the instruction of the amended notice. It is "significant[]" that objectors did not present evidence that any class members were actually deceived or misled by the notice, or that anyone actually submitted the original claim containing a release of unpleaded overtime claims. (Accord, *In re Cellphone Fee Termination Cases*, *supra*, 186 Cal.App.4th at p. 1391.) Such speculation is not enough for us to conclude the existence or use of two

31

claim forms renders the amended class settlement notice impermissibly defective, or the settlement terms unfair.

Our conclusion does not change by objectors' reliance on *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134. *Trotsky* involved a proposed settlement including claims that were not included in the complaint but were the subject of a separate pending class action lawsuit. The Court of Appeal reversed a judgment finding the class settlement and class notice to be fair and reasonable, explaining that the related action should have been disclosed to the settling class so that the class could decide which plaintiff could better represent their interests, and also to the court which could have consolidated the two actions and resolved them together. (*Id.* at pp. 151-152.) Unlike *Trotsky*, there has been no showing of the existence of a pending action involving overtime claims (including within the *Amodeo* action), or any showing at all, for that matter, that defendants were violating overtime laws in connection with the class.

Objectors cite other authorities addressing contentions of inequity in class settlements stemming from "intraclass disparities." (See *7-Eleven*, *supra*, 85 Cal.App.4th 1135; *National Super Spuds, Inc. v. New York Mercantile Exchange* (2nd Cir. 1981) 660 F.2d 9.) But they are inapposite and do not compel a finding of unfairness in this case. These cases involved concrete examples of settlements that distributed settlement amounts differently for class members who were differently situated. (See, e.g., *7-Eleven*, at pp. 1162-1163 [court upheld payment of $25 million in future benefits to current franchisees and $7 million in cash to former operators held justified because former franchisees could only be compensated by money, and current franchisees, who

32

had been with the defendant longer and had an ongoing business relationship, could be compensated by other means over time and through contractual changes]; *New York Mercantile*, 660 F.2d at pp. 14, 18-19 [settlement approval reversed because it harmed a definable minority that held "unliquidated" claims based on positions in potato futures contracts that were different from the "liquidated" claims the class shared and notice did not address the unliquidated contract claims, eliminating class members' opportunity to opt out]; *In re Vitamin Cases* (2003) 107 Cal.App.4th 820, 824-825, 829-830 [cash payment to "commercial class" and charitable distribution to "consumer class" upheld where distinction was based on the legitimate consideration of potential exorbitant distribution cost of cash payment to consumer class].)

In short, we have no basis to conclude any prejudice resulted to the class or whether true "intraclass disparity" or disparate treatment otherwise occurred by the inclusion of a release of overtime claims in the original notice. Those claims are now omitted from the amended notice and claim form, and the amended notice and claim was served on all class members. We cannot say on this record class members lacked notice of the differences between the two claims.

V. *Entry of Judgment of Dismissal*

Because we reverse the judgment and remand for further proceedings, we do not reach objectors' contention pertaining to the trial court's entry of judgment of dismissal. We leave it to the trial court on remand to interpret and apply the class settlement provisions of the California Rules of Court, which now provide: "If the court approves the settlement agreement after the final approval hearing, the court must make and enter

33

judgment. The judgment must include a provision for the retention of the court's jurisdiction over the parties to enforce the terms of the judgment. The court may not enter an order dismissing the action at the same time as or after entry of judgment. (Cal. Rules of Court, rule 3.769(h).) Further, California Rules of Court, rule 3.770 provides: "The court may not grant a request to dismiss a class action if the court has entered judgment following final approval of a settlement. . . . " (Cal. Rules of Court, rule 3.770(a).)

## DISPOSITION

The order finally approving the class action settlement agreement and judgment dismissing the case with prejudice are reversed and the matter is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

_____

O'ROURKE, J.

WE CONCUR:


_____

McDONALD, Acting P. J.


_____

IRION, J.


34