[No. C053515. Third Dist. May 8, 2008.]

In re the Marriage of MONA LEA and ULF JOHAN CARLSSON.
MONA LEA CARLSSON, Respondent, v.
ULF JOHAN CARLSSON, Appellant.

## Counsel

Ishikawa Law Office and Brendon Ishikawa for Appellant.

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Respondent.

## Opinion

**BUTZ, J.**—"It is a cardinal principle of our jurisprudence that a party should not be bound or concluded by a judgment unless he has had his day in court. This means that a party must be duly cited to appear and afforded an opportunity to be heard and to offer evidence at such hearing in support of his contentions. [¶] His right to a hearing does not depend upon the will, caprice or discretion of the trial judge who is to make a decision upon the issues. [¶] An order or judgment without such an opportunity is lacking in all the attributes of a judicial determination. [Citations.] [¶] Refusal to permit counsel . . . to present evidence and make a reasonable argument in support of his client's position [i]s not a mere error in procedure. It amount[s] to a deprival of a substantial statutory right . . . ." (*Spector v. Superior Court* (1961) 55 Cal.2d 839, 843–844 [13 Cal.Rptr. 189, 361 P.2d 909] (*Spector*).)

"Only judge when you have heard all."—Greek proverb.

This case invites application of the above principles to an unusual and perhaps unprecedented fact situation: In a routine dissolution case, the family law judge suddenly declared an end to the trial before the husband had finished putting on his case-in-chief. After displaying impatience and reluctance in allowing the parties adequate time to complete their presentations, the judge ended the trial while an expert witness for the husband was on the witness stand and counsel was in the midst of asking him a question.

■ We shall conclude that the trial court's actions deprived the husband of his due process right to a fair hearing. We shall reverse the judgment and direct the matter be retried.

### FACTUAL AND PROCEDURAL BACKGROUND

After 16 years of marriage, respondent Mona Lea Carlsson (Mona) filed the instant petition for dissolution of marriage from her husband Ulf Johan Carlsson (Ulf) in April 2004.[1] The issue of custody of their minor child was referred to a special master, and was not included in the proceedings below.

A brief synopsis of the main disputed issues follows.

*Spousal support*

Ulf was a full-time state employee. Mona, on the other hand, worked part time at a dental office. Ulf asserted that Mona was underemployed and should

---

[1] As both parties have the same surname, we refer to them by their first names. No disrespect is intended.

be imputed with a full-time income for purposes of computing his support obligation. He also claimed the imputation would result in an award of zero spousal support.

*Family residence*

The parties owned a family home in Gold River. Ulf requested that he be awarded the house and that Mona receive half of the community equity. Mona was initially agreeable to this proposal, but during the trial changed her mind and asked that the home be sold. There was substantial disagreement between the parties' experts on the value of the home.

*Rental property*

During the marriage, the Carlssons acquired an interest in rental property in Sacramento. Ownership interest in the rental property was the subject of intense dispute. The couple initially had a silent partner, Scott Moore, who was to contribute his labor in renovating the property.[2] However, Moore was called up to Army duty in Guantanamo Bay and Iraq, and ended up transferring his interest to the Carlssons.

Ulf claimed that he subsequently entered into a partnership agreement with Joseph Mayo, Jr., on the rental property, with Mona's consent. He maintained that Mona secretly filed divorce papers just before Mayo's name was to be placed on title, in an attempt to deprive Mayo of his interest in the property.[3]

*Ulf's retirement plan*

Ulf asked for an equal division of the community interest in his CalPERS (California Public Employees' Retirement System) retirement pension and requested that it be divided into two separate accounts to prevent Mona from receiving a windfall from Ulf's postdissolution contributions to his pension. Mona opposed segregation of the retirement account.

*Attorney fees*

Ulf requested that each party bear his or her own attorney fees. Mona asked that Ulf pay $40,000 of her $47,000 bill for expert and attorney fees.

*The trial*

Trial took place before Judge Peter J. McBrien for a full day on March 2 and on two half-days, March 3 and 9, 2006.

---

[2] Moore's wife, Denise Moore, was also on title as an owner.

[3] By the time of trial, Mayo had filed a lawsuit against the Carlssons for breach of the partnership agreement and had recorded a lis pendens against the rental property.

From the beginning, Judge McBrien manifested his impatience with Ulf's counsel, Sharon Huddle, and the pace of the proceedings. At one point during the first day of trial, Attorney Huddle questioned why trial was continuing through the lunch hour:

"MS. HUDDLE: Your Honor, I am going to have to eat.

"THE COURT: The reason I am going forward is because tomorrow afternoon I have a continuing trial. It has statutory preference. So, I'm insuring that we're going to complete it by noon tomorrow. *Otherwise, we may as well call a mistrial right now. Statutory preference.*

"MS. HUDDLE: Well, I have one witness driving up from Orange County and another is driving from Tulare County today.

"THE COURT: That's fine.

"MS. HUDDLE: I don't know that—I didn't have any breakfast. I assumed I was going to get some lunch.

"THE COURT: I'm not intending to go with no break for anyone. I'm suggesting that maybe we can finish with this witness and take a short break?

"MS. HUDDLE: Okay. I also have the two experts coming tomorrow.

"THE COURT: *All I'm telling you is if it's not completed by noon, it's a mistrial.*

"MS. HUDDLE: Well, I'm—the value on the family residence has to be decided. There has to be an expert on that.

"THE COURT: I don't intend to argue with you either. *I'm telling you exactly what my availability is and if you want a mistrial at this point, you're welcome to it.*

"MS. HUDDLE: Your Honor, we set the matter for two days." (Italics added.)

During the half-day of trial on March 3, Judge McBrien issued a sua sponte order that Ulf produce certain annual conflict of interest documents required by the Fair Political Practices Commission and filed with the

Secretary of State. He also advised Ulf to consult an attorney regarding his exposure to "potential penalties far beyond what we're talking about today."

The next half-day's proceedings began on March 9 with Judge McBrien expressing frustration and anger at the fact that the documents had not been produced.

"THE COURT: On the record, did your client consult some legal advice regarding that issue?

"MS. HUDDLE: I found him a lawyer.

"THE COURT: Did he bring the documents with him?

"MS. HUDDLE: He never went to work. He is on disability; he doesn't have them.

"THE COURT: So, he has violated my request to bring those documents?

"MS. HUDDLE: The way I heard you say it, it was a suggestion that he bring them.

"THE COURT: Do you want me to have the record read?

"MS. HUDDLE: He would have to go to work to see if he even has a copy.

"THE COURT: Ma'am, I would suggest that he send somebody to his workplace to get those documents before we conclude this trial."

Attorney Huddle then objected that the documents were irrelevant to the division of community property. The judge overruled the objection, remarking that, while the documents were not relevant to the present case, "they may be relevant to other proceedings." Huddle pointed out that since the court had suggested possible criminal penalties, Ulf might want to assert his Fifth Amendment privilege, but the judge rejected that assertion out of hand.

Attorney Huddle told the judge, "I don't know what to do in a situation like this when you're actually asking him to produce evidence which might incriminate him and it's not even the opposing side presenting it." Judge McBrien responded, "Ms. Huddle, am I to take that as a 'no' placing you in the possibility of contempt?" to which she replied, "No. I will tell him to go

get the records." At that point, the next witness was called and the court abandoned all further interest in the subject.

As the trial extended into the late afternoon of March 9 without a break, the following exchange occurred:

"MS. KEELEY [Mona's attorney]: I have no further questions at this time, but I would ask that the witness not be released.

"THE COURT: Okay. Ms. Huddle?

"MS. HUDDLE: Your Honor, is there any way I could get a break to use the ladies' room?

"THE COURT: *You know, you're approaching a mistrial.*

"MS. HUDDLE: I haven't even been able to talk to the gentleman who went to work to get the records you requested. He has returned. I don't know what he has to say.

"THE COURT: Okay. Is that why you're asking for a break?

"MS. HUDDLE: No. I do need to use the ladies' room. We have been here—

"THE COURT: Why don't we take a five-minute recess, *but I guarantee you, if this is not completed by 4:30, there will be a mistrial.*" (Italics added.)

Following the five-minute recess and to expedite proceedings, both counsel notified the court they were waiving their respective claims with respect to minor monetary issues. In a further effort to save time, Attorney Huddle conducted a very brief redirect examination of Ulf's expert witness without his returning to the witness stand.

Prior to the conclusion of Ulf's case, Mona's expert witness was recalled for rebuttal on the fair market value of the real properties in dispute. Once Attorney Huddle completed her cross-examination of Mona's expert, she then recalled her own expert witness, Pakhtun Shah, to testify in rebuttal on fair market value. Shah had just taken the witness stand when the trial ended with this exchange:

"MS. HUDDLE: If you redid your capitalization and your sales market approach—

"THE COURT: Pardon me. I have an EPO. Court is in recess.

"MS. HUDDLE: I think he's just taking an Emergency Protective Order request. Is that it, like a domestic violence, it's his week, right?

"THE CLERK: He's always assigned EPO's.

"THE COURT: We're going to have to adjourn this. The County operator is on the phone. This trial has ended.

"MS. HUDDLE: Your Honor, I don't even have my client's attorney fees costs put on.

"THE COURT: Then I'll reserve over that issue or you can get a mistrial, one or the other.

"MS. KEELEY: We don't want a mistrial. We'll reserve over that issue.

"MS. HUDDLE: But, Your Honor, the house that we're evaluating—

"(Judge exits room.)

"MS. KEELEY: We'll arrange another date. Don't panic.

"MS. HUDDLE: Is that what he said?

"MS. KEELEY: I'm going to ask for . . . him to reserve.

"THE WITNESS: May I go?

"MS. HUDDLE: Is he coming back? I'm in the middle of my examination.

"MS. KEELEY: Ms. Huddle, I'm not prepared for a mistrial.

"(At the hour of 4:29 p.m., the proceedings ended.)"

The judge never returned. The clerk verbally informed counsel that the trial was concluded, but that the court would permit the parties to submit

declarations on attorney fees as well as closing briefs not longer than three pages in length within one week, which both parties did.

In his closing brief, Ulf objected to the peremptory termination of the trial, pointing out that his redirect testimony was not concluded and that rebuttal testimony was not allowed. Ulf also complained that he was not permitted to put on any testimony regarding attorney fees and asserted that if he had had the opportunity, he would have introduced testimony that selling the family home would traumatize the Carlssons' minor daughter.

*Judgment*

Judge McBrien issued a written decision, ruling against Ulf on almost every issue. He rejected Ulf's contention that Mona was underemployed; ruled that Ulf and Mona were sole owners of the rental property; ordered both the family residence and the rental property sold; failed to segregate Ulf's retirement account for purposes of awarding Mona her community share; and ordered Ulf to pay Mona $35,000 in attorney and expert witness fees.[4] Despite the court's prior handwritten order that child support would not be determined until custody was resolved, the judgment ordered Ulf to pay $736 per month in child support.

## DISCUSSION

### I. Ulf's Contentions

Ulf contends that by abandoning the trial in the middle of his case-in-chief without giving him an opportunity to complete the presentation of evidence or offer rebuttal evidence, the trial court denied him his constitutional right to due process and a fair trial. On this record, we are compelled to agree.

■ "The term 'due process of law' asserts a fundamental principle of justice which is not subject to any precise definition but deals essentially with the denial of fundamental fairness, shocking to the universal sense of justice." (*Gray v. Whitmore* (1971) 17 Cal.App.3d 1, 20 [94 Cal.Rptr. 904].) " 'The trial of a case should not only be fair in fact, but it should also appear to be

---

[4] Although the parties were allowed to submit billings for attorney and witness fees, the court only heard Mona's testimony on the issue. Ulf never got a chance to testify as to his fees and costs.

fair.' [Citations.] A prime corollary of the foregoing rule is that 'A trial judge should not prejudge the issues but should keep an open mind until all the evidence is presented to him.' " (*Hansen v. Hansen* (1965) 233 Cal.App.2d 575, 584 [43 Cal.Rptr. 729].)

The trial court openly violated these precepts. After displaying ill-disguised impatience with Ulf and his counsel and repeatedly threatening a mistrial if the proceedings were not concluded quickly enough, Judge McBrien abruptly ended the trial before Ulf had finished his presentation, cutting off any opportunity for rebuttal evidence (other than six questions posed to Ulf's expert) or argument of counsel. This method of conducting a trial cannot be condoned in a California courtroom.

■ Unquestionably, the trial court has the power to rule on the admissibility of evidence, exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact. If the court errs in any of these respects, its rulings may be reviewed by a higher court and, if prejudicial, the judgment will be reversed. That kind of review is unavailable here, however, because the court's summary termination of the trial infringed on Ulf's fundamental right to a full and fair hearing.

■ "Denying a party the right to testify or to offer evidence is reversible per se." (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803] (*Kelly*); accord, *Fewel v. Fewel* (1943) 23 Cal.2d 431, 433 [144 P.2d 592]; *Guardianship of Waite* (1939) 14 Cal.2d 727, 729 [97 P.2d 238]; *Caldwell v. Caldwell* (1962) 204 Cal.App.2d 819, 821 [22 Cal.Rptr. 854] (*Caldwell*).) As the state Supreme Court has recently stated: " 'We are fully cognizant of the press of business presented to the judge who presides over the [Family Law] Department of the Superior Court . . . , and highly commend his efforts to expedite the handling of matters which come before him. However, such efforts should never be directed in such manner as to prevent a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly presented for determination. [¶] Matters of domestic relations are of the utmost importance to the parties involved and also to the people of the State of California. . . . (5) To this end a trial judge should not determine any issue that is presented for his consideration until he has heard all competent, material, and relevant evidence the parties desire to introduce.' " (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357–1358 [63 Cal.Rptr.3d 483, 163 P.3d 160] (*Elkins*), quoting *Shippey v. Shippey* (1943) 58 Cal.App.2d 174, 177 [136 P.2d 86].)

The trial court essentially ran the trial on a stopwatch, curtailing the parties' right to present evidence on all material disputed issues. Using the constant threat of a mistrial, Judge McBrien pressured Attorney Huddle into rushing through her presentation and continuing without a break. Despite his avowed compelling need for brevity, the judge himself frustrated the trial's progression with a sua sponte order that Ulf produce documents which, as the judge conceded, were not relevant to the issues before him. Most damning, the judge abruptly ended the trial in the middle of a witness's testimony, prior to the completion of one side's case and without giving the parties the opportunity to introduce or even propose additional evidence. This was reversible error.

■ The *Elkins* case fully supports our conclusion. Although *Elkins* involved a different issue than that posed here—whether a local rule that required parties to present their case in contested dissolution trials by means of written declarations was inconsistent with certain statutory provisions (*Elkins, supra,* 41 Cal.4th at p. 1345)—the court's pronouncements have a direct bearing on this case. The high court noted that "[a]lthough some informality and flexibility have been accepted in marital dissolution proceedings, such proceedings are governed by the same statutory rules of evidence and procedure that apply in other civil actions . . . ." (*Id.* at p. 1354.) "Ordinarily, parties have the right to testify in their own behalf [citation], and a party's opportunity to *call witnesses to testify and to proffer admissible evidence is central to having his or her day in court.*" (*Id.* at p. 1357, italics added.) Emphasizing a party's "fundamental right to present evidence at trial in a civil case" (*ibid.*), the *Elkins* court went on to declare, " 'One of the elements of a fair trial is the *right to offer relevant and competent evidence on a material issue.* Subject to such obvious qualifications as the court's power to restrict cumulative and rebuttal evidence . . . , and to exclude unduly prejudicial matter [citation], denial of this fundamental right is almost always considered reversible error' " (*ibid.*, quoting 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 3, pp. 28–29).

## II.  Mona's Defense of the Judgment

Mona raises a number of arguments in defense of the judgment, none of which we find persuasive.

■ Mona first contends there is no such thing as "structural error" in a civil case. However, where the trial court denies a party his right to a fair hearing, it exceeds its jurisdiction, and the error is *reversible per se.* (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 449, p. 497.)

Although we have found no case like this one, in which the trial judge literally walked out of the courtroom in midtrial, our courts have consistently applied the rule of automatic reversal where a party is prevented from having his or her full day in court. (*Spector, supra*, 55 Cal.2d at pp. 843–844 [refusal to permit evidence or argument on motion to modify preliminary injunction]; *Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1248 [88 Cal.Rptr.2d 777] [exclusion of proper method of valuation abridged party's right to present relevant evidence on material issue]; *Kelly, supra*, 49 Cal.App.4th at p. 677 [granting of motions in limine prevented jury from hearing crucial evidence]; *Caldwell, supra*, 204 Cal.App.2d at pp. 820–821 [refusal to allow testimony on needs of child where child support was contested issue]; *Moore v. California Minerals etc. Corp.* (1953) 115 Cal.App.2d 834, 836–837 [252 P.2d 1005] [trial court granted judgment on the pleadings sua sponte, without hearing evidence or argument].)

Whether we call this error "structural" or not is inconsequential. The failure to accord a party litigant his constitutional right to due process is reversible per se, and not subject to the harmless error doctrine. (*Kelly, supra*, 49 Cal.App.4th at p. 677.)[5]

Mona also asserts that Ulf "expressly waived" his due process claim by failing to request a mistrial on the two or three occasions that it was offered by the court. We do not agree. Ulf's attorney did everything possible to avoid a mistrial, yet the judge still left the courtroom in the middle of her client's case. It is unfair and unreasonable to compel a party to suffer the inconvenience and expense of a mistrial in order to preserve a due process claim on appeal. Ulf was not required to choose between a mistrial and a fair trial.

Mona next avers that Judge McBrien's actions constituted harmless error because Ulf got a chance to put on "plenty of evidence" to support his

---

[5] Contrary to Mona's suggestion at oral argument, *In re James F.* (2008) 42 Cal.4th 901 [70 Cal.Rptr.3d 358, 174 P.3d 180] (*James F.*) does not support the proposition that structural error can never occur in a civil case. In *James F.*, the trial court, in a dependency proceeding, appointed a guardian ad litem for a mentally incompetent father without the proper procedural safeguards for ensuring that he had an opportunity to contest the appointment. The state Supreme Court ruled that this *procedural* due process violation did not create an error that " 'def[ied] analysis by "harmless-error" standards' " (*id.* at p. 917, quoting *Arizona v. Fulminante* (1991) 499 U.S. 279, 309 [113 L.Ed.2d 302, 331, 111 S.Ct. 1246] (maj. opn. of Rehnquist, C. J., as to pt. II)), since it could be determined from the record that the error had no material effect on the outcome (*James F., supra*, at pp. 917–918). Nothing in *James F.* implies that per se error cannot be found in a civil appeal. Moreover, *James F.* did not involve a party's *substantive* due process right to a fair trial, the deprivation of which the state high court has held defies harmless error analysis. (See *Webber v. Webber* (1948) 33 Cal.2d 153, 161–162 [199 P.2d 934]; *Fewel v. Fewel, supra*, 23 Cal.2d at p. 433.)

contentions and was warned on several occasions that his time was limited. But harmless error analysis has no place here. The trial court's termination of the trial rendered an assessment of prejudice impossible. We cannot speculate on what evidence would have been submitted had Ulf been permitted to complete his presentation, much less determine whether it would have made a difference in the judgment. (See *Del Ruth v. Del Ruth* (1946) 75 Cal.App.2d 638, 648–649 [171 P.2d 34].) Mona's request is akin to asking that a football team be declared the winner where the referee stopped the game in the fourth quarter, on the ground that the team had a sizeable lead and a comeback by the opponent was unlikely. Ulf was entitled to a full and fair trial. Because the court did not afford him one, the integrity of the process was fatally compromised.

Mona's brief also suggests that Ulf is precluded from complaining because he did not make a sufficient objection in the trial court or an offer of proof as to what additional evidence he would have put on had the trial not been aborted summarily. Because this argument is not presented under a separate heading, it is forfeited. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1345–1346 & fn. 17 [101 Cal.Rptr.2d 591]; Cal. Rules of Court, rule 8.204(a)(1)(B).)

In any event, the claim is both legally and factually incorrect. The judge exited the courtroom as Attorney Huddle was speaking. She was not required to lodge formal objections or make offers of proof to a vacant bench. Furthermore, Ulf protested the summary termination of trial in his closing brief. He pointed out that he had not finished putting on his case-in-chief and that rebuttal testimony was not allowed. He also asserted that, had he been permitted to do so, he would have introduced rebuttal testimony that would have supported his contentions in the case, including evidence that selling the family home would traumatize the couple's daughter. Ulf did what he could to raise judicial error under extraordinary circumstances. He preserved the issue on appeal.

By arbitrarily cutting off the presentation of evidence, Judge McBrien rendered the trial fundamentally unfair and violated Ulf's right to due process. (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7, subd. (a).) Because these errors infected the integrity of the trial, they require reversal without regard to an assessment of actual prejudice. (See *People v. Mello* (2002) 97 Cal.App.4th 511, 519 [118 Cal.Rptr.2d 523].)

## DISPOSITION

The judgment is vacated and remanded for retrial. The Presiding Judge of the Sacramento County Superior Court is directed to assign the matter to a different judge. (Code Civ. Proc., §§ 170.1, subd. (c), 187.) Ulf shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Blease, Acting P. J., and Sims, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 13, 2008, S164391.