Filed 3/11/21  Esajian v. Holland CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GARY ESAJIAN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DAVID E. HOLLAND et al., <br><br> Defendants and Respondents. | F077258 <br><br> (Super. Ct. No. 16CECG00894) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Carlson, Calladine & Peterson, J. Michael Matthews; Gordon-Creed, Kelley, Holl & Sugerman, J. Michael Matthews and Ujvala Singh for Plaintiffs and Appellants.

Clifford & Brown, John R. Szewczyk, Arnold J. Anchordoquy and Daniel T. Clifford for Defendants and Respondents.

-ooOoo-

In this attorney malpractice action, the jury found in favor of plaintiff on the issue of professional negligence, but determined plaintiff failed to mitigate his damages. The damages plaintiff recovered were reduced accordingly. Plaintiff contends the verdict on failure to mitigate damages must be reversed on various grounds. He also asserts defense counsel committed misconduct which warrants reversal, and, if reversal is granted on either ground, the award of costs to defendant based on defendant's unaccepted Code of Civil Procedure section 998 offers must also be reversed. We conclude plaintiff has not established any prejudicial error, and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Morris Garcia, Richard Bambauer, and Gary Esajian (plaintiff) became interested in real property on the coast of the state of Washington for a potential development project. The property was for sale through the bankruptcy proceeding of the owners, Terry and Vicki Larson (the Larsons). There was a mile-long dike on the property, which had been used by Weyerhaeuser Company (Weyerhaeuser) in its lumber operations. There was a 1953 contract with subsequent amendments between the Nelson family, who had owned the property at the time, and Weyerhaeuser; the contract obligated Weyerhaeuser to maintain the dike in its 1953 condition. The Weyerhaeuser contract remained in effect only as long as members of the Nelson family retained a substantial interest in the property affected by the dike. Vicki Larson was a member of the Nelson family. Weyerhaeuser had not maintained the dike in years, and the Larsons believed they had a valuable claim against Weyerhaeuser for its failure to maintain the dike as agreed.

On August 25, 2008, a group of investors that included Garcia, Bambauer, plaintiff, and others, signed a purchase and sale agreement for the property and submitted it to the bankruptcy court for approval. The investors offered $1.6 million for the property. The investor group was not represented by an attorney, and the purchase and sale agreement was drafted by the Larsons' attorney. It contained a contingency: If the

2.

parties determined conveyance of portions of the property might compromise the parties' rights under the Weyerhaeuser contract, the Larsons were to retain their interest in those portions of the property, but "execute an irrevocable assignment of all of [their] rights thereunder to the buyer … including provisions for the conveyance of such portions of the property to buyer immediately upon the parties' reasonable determination that such conveyance shall no longer compromise the parties' rights in the Weyerhaeuser [contract]." The provision for the Larsons to retain title to a portion of the property was included in order to preserve the claim against Weyerhaeuser.

Limited liability companies or corporations of the individual investors[1] became members of a newly formed limited liability company, Kindred Island Holdings, LLC (KIH), to take title to the property. Bambauer and Garcia became the co-managers of KIH. The Larsons became members of KIH in order to retain an ownership interest in the property; they also contracted with KIH to manage the property.

KIH was unable to borrow the funds necessary to pay the purchase price. Instead, plaintiff and Garcia borrowed $1.7 million from Farm Credit West and passed the loan through to KIH, charging it the same rate of interest they were being charged by Farm Credit West. When plaintiff became a lender in the transaction, he retained David E. Holland (defendant), an attorney he had worked with in prior transactions, to represent and advise him in the transaction. Plaintiff told defendant he wanted to be secured like a bank; he expected defendant to ensure that the loan was fully secured by a deed of trust on the property and personal guaranties by the other investors.

After August 25, 2008, at defendant's suggestion, the terms of the transaction changed. Instead of including the provision for an irrevocable assignment of rights, the amended purchase and sale agreement included an option agreement. Defendant opined

---

[1]     Plaintiff's limited liability company was Westhaven Holdings, LLC, which was initially a plaintiff in this action.

3.

that "the requirement that the Nelson family retain a substantial interest most logically means retaining fee title to a substantial portion of the land subject to the agreement." He was concerned the irrevocable assignment could be considered an alienation of an interest in the property and suggested structuring the transaction with an option to purchase the land affected by the Weyerhaeuser contract. The amended purchase and sale agreement included an option on a portion of the property (the option or option agreement); KIH's acquisition of the property subject to the option agreement was conditioned on KIH's (1) "performance of its obligations under the purchase agreement" and related agreements, and (2) "reasonable pursuit of the Weyerhaeuser claim[]." The related agreements included a property management agreement, which required that KIH pay the Larsons $5,000 per month for their property management services, a pasture lease, and a golf course ground lease.

Escrow on the transaction closed on November 12, 2008. Although the KIH limited liability company agreement required the members, except the Larsons and the lenders, to execute guaranties of the loan, at close of escrow only Bambauer had signed a guaranty. Defendant told plaintiff that KIH was obligated to close escrow regardless of the status of the guaranties, and defendant would obtain signatures on them later.

In 2009, Garcia told plaintiff he was having financial difficulties and asked to be taken off the Farm Credit West loan; he was concerned the deed of trust might become part of his potential bankruptcy proceeding. Plaintiff agreed and assumed full responsibility for the loan from Farm Credit West; he was already responsible for the entire amount under the terms of that loan. Garcia's son, Kevin Garcia, replaced Garcia in KIH. Plaintiff replaced Garcia as co-manager of KIH.

When the first annual interest payment on plaintiff's loan to KIH came due, KIH made only a partial payment. Bambauer advised plaintiff that KIH had insufficient funds to make the full payment. Plaintiff and Bambauer made capital calls to the KIH members, to raise operating capital to pay KIH's expenses; no one contributed. Plaintiff

4.

also demanded that the members of KIH (other than plaintiff and the Larsons) sign guaranties ensuring payment of the loan. Three members signed guaranties. Two members withdrew from KIH rather than sign guaranties. Because of the lack of capital, KIH was unable to make interest payments on plaintiff's loan, to continue to pay the Larsons under the property management agreement, or to pay taxes and other operating expenses of the property.

In 2010, plaintiff hired an attorney, John Michael, who was recommended by defendant, to pursue in California recovery on his loan to KIH. In November 2010, Michael filed an action to recover on the loan guaranties (guaranty action). The action was held in abeyance when a potential buyer of the property was found, but the sale was not completed, and the guaranty action continued. In February 2013, the guaranty action was resolved by a settlement in the amount of $225,000. Plaintiff's net recovery, after deduction of attorney fees, was approximately $25,000.

In the course of the guaranty action, one of the defendants filed a cross-complaint from which plaintiff learned for the first time that the deed of trust securing the loan he made to KIH included only the property to which KIH took title, and did not include the property subject to the option agreement. The property subject to the option was more than half of the total property involved in the transaction. An appraiser estimated the value of the property subject to plaintiff's deed of trust to be $600,000 and the value of the property subject to the option to be $1.1 million.

In April 2011, plaintiff retained a Washington attorney, Amit Ranade, to foreclose the deed of trust (foreclosure action). Because the land subject to the deed of trust was agricultural land, under Washington law a judicial foreclosure was required. In the foreclosure action in Washington, plaintiff obtained a judgment for the full amount owed on the loan. He obtained an order for sale of the property described in the deed of trust, and a separate order for sale of the option rights. In the spring of 2013, plaintiff

5.

purchased both at the judicial sales, subject to a one-year redemption period within which KIH had the right to redeem the property from the sale.

In September of 2012, while the guaranty and foreclosure actions were pending, the Larsons sued KIH for breach of contract and for rescission of the option agreement (rescission action). They alleged KIH had not performed its obligations to pay the Larsons a property management fee, to pay for maintenance and equipment as required under the pasture lease and the golf course ground lease, and to reasonably pursue the claim against Weyerhaeuser. The KIH members discussed the rescission action, but because KIH lacked funds, it did not defend the action. KIH's default was entered, despite plaintiff's opposition. A default judgment was entered against KIH, rescinding the option agreement and awarding the Larsons $589,087.14 in damages. Plaintiff unsuccessfully attempted to have the default judgment set aside. After plaintiff succeeded to KIH's rights under the option agreement, he was entitled to restitution of the consideration KIH had given for the option agreement. Plaintiff settled with the Larsons, agreeing that the Larsons could keep all of the property (the option property and the deed of trust property) if they paid plaintiff $850,000; if they were unable to pay within a specified period, plaintiff would take title to all of the property. The Larsons paid plaintiff the $850,000 and took the property. After deduction of attorney fees for the rescission action, plaintiff netted about $285,000.

Plaintiff and Westhaven Holdings, LLC, filed this action, apparently seeking damages for professional negligence against defendant and the law firms through which he practiced law.[2] During the trial, Westhaven Holdings, LLC, dismissed its action, and plaintiff dismissed his claims against defendant's law firms; the jury's verdict addressed plaintiff's claims against defendant only. The jury found defendant was negligent in performing attorney services for plaintiff, and his negligence was a substantial factor in

---

**2** The record does not include the complaint in this action.

6.

causing harm to plaintiff in the amount of $936,724.16. It found plaintiff was not comparatively negligent, but he did fail to mitigate his damages, in the amount of $655,706.91. The trial judge determined the net award to plaintiff was $281,017.25.

Plaintiff and defendant each filed a memorandum of costs, and each moved to strike or tax the other's costs. Defendant contended plaintiff's recovery was less than the settlements defendant offered in his Code of Civil Procedure section 998 offers, which were rejected by plaintiff, and therefore defendant was entitled to recover his costs incurred after the offers. Plaintiff asserted he was the prevailing party as the party with a net monetary recovery, and defendant's Code of Civil Procedure section 998 offers were invalid. The trial court granted both motions; it found plaintiff was the prevailing party and awarded him his pre-offer costs; it awarded defendant his post-offer costs, including expert witness fees.

Plaintiff appeals, asserting his mitigation efforts were reasonable as a matter of law, the finding that he failed to mitigate his damages was not supported by substantial evidence, certain evidence relating to his mitigation of damages was improperly excluded, and defense counsel engaged in prejudicial misconduct during trial. Further, if the judgment is modified or reversed as to mitigation of damages, the award of costs to defendant must also be reversed.

## DISCUSSION

### I. Failure to Mitigate Damages

#### A. Standard of review

"[A] plaintiff cannot be compensated for damages that were not incurred or could have been mitigated by reasonable effort or expenditures. [Citation.] Whether a plaintiff acted reasonably to mitigate damages, however, is a factual matter to be determined by the trier of fact, and is reviewed under the substantial evidence test." (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 884.) "Under the substantial evidence rule, we must accept the evidence most favorable

to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.) We must also "draw all reasonable inferences in support of the trial court's judgment." (*Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 308.)

"An appellate court ' "must *presume* that the record contains evidence to support every finding of fact …." ' [Citations.] It is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence. [Citation.] This burden is a 'daunting' one. [Citation.] 'A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient*. [Citation.]' [Citation.] '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.' " (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

### B. Doctrine of mitigation of damages

"It has been the policy of the courts to promote the mitigation of damages. [Citations.] The doctrine [of mitigation of damages] applies in tort, wilful as well as negligent. [Citations.] A plaintiff cannot be compensated for damages which he could have avoided by reasonable effort or expenditures." (*Green v. Smith* (1968) 261 Cal.App.2d 392, 396 (*Green*).) "[T]he wrongdoer is not required to compensate the injured party for damages which are avoidable by reasonable effort on the latter's part." (*Ibid*.) Mitigation of damages comes into play after a legal wrong has occurred and the plaintiff has become aware of the resulting injury, but while some damages may still be averted. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1066; *Tormey v. Anderson-Cottonwood Irrigation Dist*. (1921) 53 Cal.App. 559, 566.) "The burden of proving a

8.

plaintiff failed to mitigate damages … is on the defendant …." (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A., supra,* 221 Cal.App.4th at p. 884.)

The doctrine of mitigation of damages, however, "does not require the injured party to take measures which are unreasonable or impractical or which would involve expenditures disproportionate to the loss sought to be avoided or which may be beyond his financial means. [Citations.] The reasonableness of the efforts of the injured party must be judged in the light of the situation confronting him at the time the loss was threatened and not by the judgment of hindsight. [Citations.] The fact that reasonable measures other than the one taken would have avoided damage is not, in and of itself, proof of the fact that the one taken, though unsuccessful, was unreasonable. [Citation.] 'If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen.' [Citation.] The standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas of law. [Citations.] It is sufficient if he acts reasonably and with due diligence, in good faith." (*Green*, *supra*, 261 Cal.App.2d at pp. 396–397.)

### C. Substantial evidence of failure to mitigate

#### 1. Reasonable mitigation as a matter of law

Plaintiff argues his mitigation efforts were reasonable as a matter of law, because he retained an attorney (Michael) to conduct or direct mitigation efforts on his behalf. Plaintiff cites no legal authority supporting the existence of a rule that retaining an attorney per se satisfies a plaintiff's obligation to engage in reasonable mitigation efforts, and we have found none. We decline to adopt such an absolute rule. In some circumstances, the appropriate steps to minimize the injured party's damages may be more readily identified and acted upon by the party than by an attorney; further, where time is of the essence, delay in taking action while hiring an attorney may be

9.

unreasonable. An injured party's reliance on, or action in accordance with, the advice or recommendation of an attorney hired to give advice on the particular matter is certainly a factor to consider in determining whether the party's actions to mitigate the damages were reasonable. It is not necessarily dispositive, however.

### 2. Plaintiff's efforts to mitigate

Plaintiff's primary theory of defendant's negligence was that plaintiff, along with Garcia, agreed to loan KIH the funds to purchase the Larsons' property, with the expectation that the loan would be secured by a deed of trust on the entire property and by the personal guaranties of the principals of the other members of KIH. Plaintiff expressed this to defendant when he told defendant he wanted to be secured like a bank. Instead, escrow closed with only one guaranty signed. Further, at defendant's suggestion, the transaction was altered to include the option agreement, in order to preserve the Larsons' claim against Weyerhaeuser. The deed of trust plaintiff saw prior to close of escrow included all the parcels of property involved in the transaction; it was subsequently amended to exclude the property subject to the option agreement, but the amended document was not sent to plaintiff. Plaintiff asserted defendant did not disclose to him at any time, prior to close of escrow or after, that because of the option, the deed of trust did not include all of the parcels. There was evidence plaintiff did not learn this until sometime in 2011, after KIH had defaulted on the loan and plaintiff had hired counsel and sued on the guaranties.

The jury found defendant was negligent in performing attorney services for plaintiff. Consequently, the damages to be mitigated were those flowing from the failure to obtain personal guaranties of plaintiff's loan to KIH from the members of KIH who were required to give them, and the failure to secure the loan by including all the parcels of property in the deed of trust securing the loan.

Plaintiff argues that the only relevant consideration is what mitigation efforts plaintiff undertook and whether defendant demonstrated they were unreasonable. He

relies on language in *Green*: "The fact that reasonable measures other than the one taken would have avoided damage is not, in and of itself, proof of the fact that the one taken, though unsuccessful, was unreasonable. [Citation.] 'If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen.' " (*Green*, *supra*, 261 Cal.App.2d at p. 397.) Plaintiff contends defendant merely presented alternative steps plaintiff could have taken and failed to demonstrate that plaintiff's actual efforts at mitigation were unreasonable. Therefore, he concludes, defendant failed to prove by substantial evidence that plaintiff did not adequately mitigate his damages.

"An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient.… An appellant … who cites and discusses only evidence in [his] favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.)

Plaintiff asserts defendant did not present evidence critical of what plaintiff actually did to mitigate his damages. He asserts he conducted an electronic search of the record for the words "mitigation" and "minimize" and found "no evidence in the record that anyone ever attacked [plaintiff's] mitigation efforts as unreasonable." Use of the word "mitigation" or the word "minimize" is not necessary to express criticism of plaintiff's actions, however.

The record does contain evidence from which the jury could conclude plaintiff's actions regarding the guaranties were unreasonable. There was evidence plaintiff was aware, at close of escrow, that only one member of KIH had signed a guaranty. Defendant told him at the time that the members were required by the agreement that created KIH to sign guaranties of the loan. When KIH failed to make its first payment of

11.

interest on the loan, Bambauer and plaintiff made a capital call; plaintiff told the members to sign guaranties or withdraw. Gabe Duus and Mark Hoffman, whose limited liability companies were members of KIH, refused to sign guaranties; plaintiff permitted them to withdraw from KIH without signing the guaranties required by the KIH agreement, although they appeared financially strong. There was no evidence Duus or Hoffman compensated KIH or plaintiff for releasing them from the guaranty obligation. Bambauer testified Hoffman offered to honor his share of the first interest payment on the loan, but plaintiff refused the offer. Defendant's expert, Charles Hansen, noted the withdrawal of Duus and Hoffman reduced the potential sources of funding for KIH and its operations.

Plaintiff's brief failed to summarize this and any other evidence supporting the jury's verdict finding plaintiff failed to act reasonably to avoid his damage. It failed to demonstrate that the evidence supporting the jury's finding was insubstantial. Consequently, plaintiff has not established that the finding of failure to mitigate damages was not supported by substantial evidence.

## II. Limitations on Michael's Testimony

### A. Standard of review

Evidentiary rulings are reviewed for abuse of discretion. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) "Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.] There must be a showing of a clear case of abuse and miscarriage of justice in order to warrant a reversal. [Citation.] A trial court will abuse its discretion by action that is arbitrary or ' "that transgresses the confines of the applicable principles of law." ' [Citations.] In appeals challenging discretionary trial court rulings, it is the appellant's burden to establish an abuse of discretion." (*Ibid*.)

12.

## B. Exclusion of evidence

Plaintiff designated Michael as a nonretained expert to testify at trial. Defendant filed his motion in limine No. 7, seeking to exclude any expert opinion testimony by Michael at trial, on the grounds Michael was not qualified as an expert on transactional law (defendant's field) and Michael expressed no opinions at deposition on any other subject. Plaintiff's written opposition to the motion asserted Michael was a nonretained percipient expert witness who should be permitted to testify to his opinions based on his direct involvement in the underlying events and his knowledge and experience as an attorney. In oral argument of the motion, plaintiff acknowledged Michael would not testify to the standard of care applicable to a transactional attorney such as defendant; rather, Michael was expected to testify only to the actions he took in handling the matter for plaintiff, and to the reasons he took them. Defendant asserted he had not been able to ask at deposition why Michael took certain actions, because the questions would implicate the attorney-client privilege if the answer was that plaintiff told Michael to take them. Plaintiff offered to resolve the issue by approaching the bench and asking for a sidebar if he wished to ask any questions to elicit opinions from Michael. The trial court indicated the motion was granted, subject to that proviso.

Plaintiff now challenges the ruling on that motion in limine, asserting that it resulted in the exclusion of Michael's testimony concerning his mitigation efforts. Plaintiff complains the ruling prevented Michael from explaining what the available mitigation options were, Michael's assessment of their strengths and weaknesses, and why he recommended suing on the guaranties and foreclosing on the deed of trust parcels, rather than taking other actions.

Plaintiff has made no showing that he complied with the trial court's ruling and the trial court excluded Michael's opinion testimony. That is, plaintiff has not directed us to any portion of the record in which he requested a sidebar and advised the trial court he

13.

wished to ask for Michael's opinion about mitigation matters, and the trial court either refused the sidebar or ruled against plaintiff after hearing his argument.

Plaintiff cites only one occasion when he contends he questioned Michael and the trial court sustained defendant's objection based on the in limine ruling. On that occasion, plaintiff asked Michael for his conclusion regarding whether plaintiff should have put money into KIH to operate it or fund a defense in the rescission action; defendant objected, and the trial court sustained the objection.

Plaintiff contends the trial court subsequently permitted defendant to question Michael about his opinions, over plaintiff's objection. On the occasion cited by plaintiff, Michael was permitted to testify that he informed Ranade of the default judgment in the rescission action, because he was concerned that it might have an adverse impact on plaintiff. Plaintiff's objection was based on lack of foundation and irrelevance, not on the ruling against Michael offering expert opinion evidence.

Plaintiff also complains of a third occasion, when Michael testified regarding why he pursued the guaranty and foreclosure actions rather than funding KIH, and the trial court struck the testimony. During defendant's cross-examination, Michael confirmed that his response to Bambauer's implied request that plaintiff fund KIH so it could hire an attorney to defend itself in the rescission action was that plaintiff would not put up the money to do so. Michael continued by explaining why he and plaintiff made that decision. Defendant's motion to strike the explanation was granted. The motion to strike, however, was not based on Michael expressing an expert opinion, but on the ground the explanation portion of the answer was nonresponsive.

During a break after the three incidents cited by plaintiff occurred, the parties and the trial court again discussed permitting Michael to testify regarding the reasons for the actions he took. The trial court agreed that Michael's reasons for his actions might be relevant to the defense of failure to mitigate damages. Plaintiff's counsel asked if he would be permitted to ask on redirect " 'Why did you do that? What was your

14.

reasoning?' " The trial court stated: "If his answer is, 'Because I thought [defendant] committed malpractice or made a mistake,' then no. If it's [']because I wanted to salvage something,['] okay." In other words, the trial court would allow testimony regarding the reasons for Michael's mitigation efforts, but not opinion testimony regarding defendant's alleged professional malpractice. Plaintiff indicated that, on redirect, he would go back to areas already covered and ask Michael what was significant to him and what factors he considered in his decisions. The trial court pointed out defendant had opened the door to such questions and confirmed that plaintiff could do so.

On redirect, plaintiff questioned Michael about his reasons for making certain decisions after he learned that the option parcels were not included as part of the security for plaintiff's loan and the security was of less value than the amount loaned. Michael testified to substantially the same information that plaintiff complains was stricken pursuant to defendant's objection on the third occasion he cites, in which Michael's testimony was excluded.

Plaintiff has not cited us to any portion of the record demonstrating that, during redirect examination, the trial court sustained objections to any questions regarding Michael's reasons for his mitigation decisions or excluded any such testimony. Plaintiff argues that his examination on redirect was limited by the scope of defendant's cross-examination that opened the door to plaintiff's further examination. He asserts his "counsel was not permitted to question Mr. Michael on all of the issues on which the trial court had previously excluded testimony." In support of this assertion, he cites to the portion of his opening brief discussing the three occasions he contends show error in the court's exclusion of evidence. The first and third relate to the reasons plaintiff did not fund KIH so that it could present a defense in the rescission action. As previously discussed, that information was elicited on redirect. The second occasion involved testimony elicited by defendant. None of these portions of the record support plaintiff's

claim that, on redirect, the trial court prevented his counsel from questioning Michael about other mitigation issues.

Plaintiff has not identified any information regarding Michael's reasons for his mitigation efforts that plaintiff was precluded from eliciting at trial. We conclude plaintiff has not established that the ruling on defendant's motion in limine No. 7 or the rulings on any objections precluded plaintiff from presenting evidence of Michael's reasons for taking particular actions in an effort to mitigate plaintiff's damages. Plaintiff has not established an abuse of the trial court's discretion in admitting or excluding evidence.

## C. Prejudice

Even if we were to find an erroneous exclusion of evidence, plaintiff has not established that the error was prejudicial. "An appellant bears the burden to show not only that the trial court erred, but also that the error was prejudicial in that it resulted in a miscarriage of justice. [Citations.] An error is prejudicial and results in a miscarriage of justice only if the reviewing court concludes, based on its review of the entire record, that it is reasonably probable that the trial court would have reached a result more favorable to the appellant absent the error." (*Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999.)

In his briefs, plaintiff has made no attempt to show that the asserted error was prejudicial. Rather, he cites *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 294 (*Carlsson*), and appears to contend the erroneous exclusion of evidence was per se prejudicial and mandates reversal. Plaintiff is mistaken.

" 'No form of civil trial error justifies reversal and retrial, with its attendant expense and possible loss of witnesses, where in light of the entire record, there was no actual prejudice to the appealing party.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801 (*Cassim*).) "A judgment will not be reversed due to the erroneous exclusion of evidence unless it appears, upon examining the entire cause, including the evidence, a

16.

miscarriage of justice has resulted." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 24; see also Evid. Code, § 354.)

In *Carlsson*, the trial judge in a dissolution action displayed impatience with the husband's counsel throughout the trial. (*Carlsson*, *supra*, 163 Cal.App.4th at pp. 284, 286.) He demanded the husband's attorney produce admittedly irrelevant documents and threatened her with a mistrial when she asked for a restroom break. (*Id*. at pp. 286–288.) While the husband's expert was still testifying regarding the value of the parties' real property, and while the husband's attorney was in mid-question, the judge suddenly announced he had an emergency protective order request, stated "[t]his trial has ended," and left the courtroom (*Id*. at pp. 288–289.) The trial court's written decision ruled against the husband on almost every issue. (*Id*. at p. 290.)

On appeal, the husband contended "that by abandoning the trial in the middle of his case-in-chief without giving him an opportunity to complete the presentation of evidence or offer rebuttal evidence, the trial court denied him his constitutional right to due process and a fair trial." (*Carlsson*, *supra*, 163 Cal.App.4th at p. 290.) The court was "compelled to agree." (*Ibid*.) Due process required a trial that was fair in fact, and also in appearance. (*Id*. at pp. 290–291.) " ' "A trial judge should not prejudge the issues but should keep an open mind until all the evidence is presented to him." ' " (*Id*. at p. 291.) The court found the trial judge "openly violated these precepts." (*Ibid*.) It stated:

> "Unquestionably, the trial court has the power to rule on the admissibility of evidence, exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact. If the court errs in any of these respects, its rulings may be reviewed by a higher court and, *if prejudicial*, the judgment will be reversed. That kind of review is unavailable here, however, because the court's summary termination of the trial infringed on [the husband's] fundamental right to a

full and fair hearing.  [¶]  'Denying a party the right to testify or to offer evidence is reversible per se.' " (*Carlsson*, *supra*, 163 Cal.App.4th at p. 291, italics added.)

The court reiterated that " ' "a trial judge should not determine any issue that is presented for his consideration until he has heard all competent, material, and relevant evidence the parties desire to introduce." ' " (*Carlsson*, *supra*, 163 Cal.App.4th at p. 291.)

Thus, the court recognized that, under ordinary circumstances, when evidence is excluded because it is inadmissible, unduly prejudicial, or cumulative, the evidentiary ruling may be reversed on review only if it is found to be prejudicial.  The court found a prejudicial due process violation in *Carlsson* because the trial court excluded *any* further evidence without regard to its admissibility, relevance, or materiality.  " ' "One of the elements of a fair trial is the *right to offer relevant and competent evidence on a material issue.*  Subject to such obvious qualifications as the court's power to restrict cumulative and rebuttal evidence … , and to exclude unduly prejudicial matter [citation], denial of this fundamental right is almost always considered reversible error." ' " (*Carlsson*, *supra*, 163 Cal.App.4th at p. 292.)

In *Gordon v. Nissan Motor Co., Ltd*. (2009) 170 Cal.App.4th 1103 (*Gordon*), the plaintiff was injured in a rollover accident in a vehicle.  (*Id*. at p. 1107.)  He sued the vehicle manufacturer, alleging the vehicle was defectively designed because of its propensity to roll over, and because its roof did not adequately protect occupants in the event of a collision.  (*Ibid*.)  Prior to the first trial, the plaintiff indicated he would not pursue the defective roof claim.  (*Id*. at pp. 1107–1109.)  The first trial ended in a mistrial.  (*Id*. at p. 1109.)  Prior to the second trial, plaintiff designated experts to testify regarding defects in the vehicle roof.  (*Id.* at pp. 1109–1110.)  The defendant moved to strike those portions of the expert designation, and the court granted the motion.  (*Id*. at p. 1110.)  This prevented the plaintiff from presenting any evidence on his defective roof

theory at the second trial. (*Ibid*.) Judgment was in favor of the defendant, and the plaintiff appealed. (*Ibid*.)

The court concluded the trial court abused its discretion by precluding expert witness testimony on the plaintiff's roof defect claim at the second trial. (*Gordon*, *supra*, 170 Cal.App.4th at p. 1112.) The plaintiff was entitled to present that claim in the second trial, even though he abandoned it prior to the first trial. (*Ibid*.) The trial court's order striking portions of the plaintiff's expert designation was reversible per se. (*Id*. at p. 1114.)

> " 'When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. [Citation]' [Citation.] However, when a trial court erroneously denies *all* evidence relating to a claim, or *essential* expert testimony without which a claim cannot be proven, the error is reversible per se because it deprives the party offering the evidence of a fair hearing and of the opportunity to show actual prejudice. [Citations.]
>
> "The erroneous denial of some but not all evidence relating to a claim [citations] differs from the erroneous denial of all evidence relating to a claim, or essential expert testimony without which a claim cannot be proven [citations]. In the former situation, the appellant must show actual prejudice; in the latter situation, the error is reversible per se." (*Gordon*, *supra*, 170 Cal.App.4th at pp. 1114–1115.)

This is not a case like *Carlsson*, where the trial court arbitrarily denied a party the right to present any further evidence, regardless of admissibility or relevance, and thereby violated that party's right to due process. It also is not like *Gordon*, where the trial court improperly denied the plaintiff the opportunity to present any expert evidence on a claim that could only be established with expert evidence.

Here, the trial court initially excluded a particular type of evidence because it concluded the evidence was inadmissible under the circumstances of the case; the trial court later concluded defendant opened the door to introduction of at least some of that evidence on redirect. While plaintiff may certainly challenge the propriety of the trial

19.

court's ruling on admissibility, in order to obtain a reversal of the judgment, he must show not only that evidence was improperly excluded, but also that the exclusion was prejudicial. He has not specified any questions he would have asked Michael or identified any evidence he would have elicited from him in the absence of the trial court's ruling on defendant's motion in limine No. 7, which excluded Michael's opinions. Plaintiff has not identified any testimony regarding the actions Michael or plaintiff took to mitigate plaintiff's damages or the reasons for them, which he was ultimately precluded from introducing at trial. Without identifying the evidence he contends was improperly excluded, plaintiff cannot demonstrate, and he has not demonstrated, that he was prejudiced by any exclusion of Michael's testimony.

## III.    Attorney Misconduct

Plaintiff contends defense counsel committed misconduct in questioning Ranade, the attorney who handled the Washington foreclosure action for plaintiff. In his motion in limine No. 14, plaintiff asked the trial court to exclude evidence of the Larsons' alleged sale of all the property involved in their transaction with KIH, after they acquired it in settlement of their rescission action. Plaintiff asserted some witnesses had testified in discovery to what they heard the sale price was. He argued such testimony should be excluded at trial because it constituted hearsay and was irrelevant. On defense counsel's request and his representation that he might acquire more evidence regarding the sale, the trial court deferred ruling on the motion. It observed: "[I]t's looking like unless you have direct actual evidence, I'm not going to allow that."

In his cross-examination of Ranade, defense counsel elicited testimony that the Larsons' rescission action was settled, with the Larsons paying plaintiff $850,000 for the parcels he owned. Counsel asked where the Larsons got the funds to pay plaintiff.

20.

Plaintiff's objection, based on the ruling on the motion in limine, was overruled. The testimony continued:

> "[RANADE]: Well, I know now, I didn't know at the time.
>
> "[DEFENSE COUNSEL]:
>
> "Q. What's your understanding, sir?
>
> "A. As I recall, they made a deal with the neighboring Native American tribe and got the money to pay off Mr. Esajian.
>
> "Q. And do you know the amount?
>
> "[PLAINTIFF'S COUNSEL]: Object, your Honor, lacks foundation.
>
> "[RANADE]: I --
>
> "THE COURT: Overruled. [¶] Go ahead.
>
> "[RANADE]: I don't remember the amount.
>
> "[DEFENSE COUNSEL]:
>
> "Q. Does $2.4 million sound accurate to you?
>
> "[PLAINTIFF'S COUNSEL]: Your Honor --
>
> "THE COURT: Sustained. [¶] If you have something to refresh his recollection maybe, but you can't just testify."

Outside the presence of the jury, plaintiff's counsel asserted the trial court ruled testimony regarding the monetary amount was not to be admitted without first laying a foundation, and defense counsel's question, placing the amount in the jurors' minds without laying any foundation, was misconduct. Defense counsel denied intentionally violating the in limine order, and the trial court declined to cite him for misconduct. The trial court indicated it would consider addressing the testimony with the jury but cautioned doing so might focus more attention on it; the trial court advised plaintiff's

21.

counsel to think about what to do.  Plaintiff's counsel chose not to request an instruction to the jury.

Plaintiff contends asking the question constituted misconduct affecting the jury's finding of failure to mitigate, and warrants retrial of that issue, because no cautionary instruction by the trial court could have eliminated the harm caused by the misconduct.

"The term 'misconduct' implies 'a dishonest act or an attempt [by an attorney] to persuade the court or jury, by use of deceptive or reprehensible methods.' " (*People v. Chojnacky* (1973) 8 Cal.3d 759, 766.)  " 'Generally, to preserve for appeal an instance of misconduct of counsel in the presence of the jury, an objection must have been lodged at trial.' [Citation.]  In addition to objecting, a litigant faced with opposing counsel's misconduct must also 'move for a mistrial or seek a curative admonition' [citation] unless the misconduct is so persistent that an admonition would be inadequate to cure the resulting prejudice [citation].  This is so because '[o]ne of the primary purposes of admonition at the beginning of an improper course of argument is to avoid repetition of the remarks and thus obviate the necessity of a new trial.' " (*Cassim*, *supra*, 33 Cal.4th at pp. 794–795.)  If the offended party fails to object and request an admonition, " 'the error is waived unless the misconduct was of so aggravated a character that it could not be cured by any instruction.' " (*Whitfield v. Roth* (1974) 10 Cal.3d 874, 892.)  " 'It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.' [Citation.]  Only misconduct so prejudicial that an admonishment would be ineffective excuses the failure to request such admonishment." (*Ibid*.)

Plaintiff's counsel began to object to defense counsel's question, but the trial court sustained the objection before it was finished.  The witness never answered the question.  After a discussion, plaintiff's counsel declined to request an admonition to the jury to disregard the question; he also did not ask for a mistrial.  Consequently, the error is

22.

deemed waived unless the misconduct was so aggravated or persistent that an admonition would not have been effective.

Repeated violations of pretrial in limine rulings, despite sustained objections, constitute misconduct. (*Bigler-Engler v. Breg, Inc*. (2017) 7 Cal.App.5th 276, 295.) Additionally, " '[w]hile a wide latitude should be given in cross-examinations, counsel in putting questions to the witness should not be allowed to assume facts not in evidence and state as positive assertions facts which if true would be detrimental to the opposing party's case and of such a nature as to inflame and prejudice the minds of the jurors. This is especially true where … there is no proof of the facts asserted.… The inherent vice of the matter lies in the attempt to bring before the jury in a roundabout way facts which could not be proved and which from all appearances may have been entirely false.' " (*Dastagir v. Dastagir* (1952) 109 Cal.App.2d 809, 818–819.)

Defense counsel's question assumed a fact not in evidence, presented it as if it were an established fact, and asked that the witness confirm it. He failed to first lay a foundation establishing the witness's personal knowledge of that information before broaching the subject, as the trial court's ruling on the in limine motion required.

Plaintiff does not assert a repeated violation of the trial court's in limine ruling, or any violations after plaintiff's objection was sustained. Defense counsel asked one question, and the trial court immediately sustained an objection to it. The witness did not answer the question, so there was no testimony to strike. Further, the witness had already testified he did not remember the amount the Larsons received from the tribe. Although defense counsel should have laid a proper foundation of personal knowledge before asking the question, as the trial court's in limine ruling indicated he should do, we conclude defense counsel's question was not misconduct so aggravated or persistent that an admonition would have been ineffective to cure the error. Consequently, we conclude plaintiff has not established attorney misconduct so aggravated or persistent that it falls

23.

within the exception to the rule that failure to object and request an admonition waives a claim of attorney misconduct.

"[I]t is not enough for a party to show attorney misconduct. In order to justify a new trial, the party must demonstrate that the misconduct was prejudicial. [Citation.] As to this issue, a reviewing court makes 'an independent determination as to whether the error was prejudicial.' [Citation.] It 'must determine whether it is reasonably probable [that the appellant] would have achieved a more favorable result in the absence of that portion of [attorney conduct] now challenged.' [Citation.] It must examine 'the entire case, including the evidence adduced, the instructions delivered to the jury, and the entirety of [counsel's] argument,' in determining whether misconduct occurred and whether it was sufficiently egregious to cause prejudice. [Citation.] 'Each case must ultimately rest upon a court's view of the overall record, taking into account such factors, inter alia, as the nature and seriousness of the remarks and misconduct, the general atmosphere, including the judge's control, of the trial, the likelihood of prejudicing the jury, and the efficacy of objection or admonition under all the circumstances.' " (*Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 149.)

Plaintiff challenges a single improper question in a trial that lasted approximately 14 days. We do not find anything in the record suggesting the unanswered question was likely to have prejudiced the jury against plaintiff. Plaintiff does not contend, and the record does not reflect, that the trial judge failed to control the courtroom or the examination by counsel. The trial court immediately sustained an objection to the question and did not permit further questioning on the subject.

"[W]e also consider the ameliorating effect of the trial court's instructions to the jury to guide its decisionmaking." (*Cassim*, *supra*, 33 Cal.4th at p. 803.) The trial court repeatedly instructed the jury to decide the facts and the case only on the evidence presented at trial. It instructed the jury that what the attorneys said during trial was not evidence. Further, it instructed that "[t]he attorneys' questions are not evidence. Only

the witnesses' answers are evidence. You should not think that something is true just because an attorney's question suggests that it is true." The trial court also instructed the jury that, "[i]f I agree with the objection, I will say it is sustained. If I sustain an objection, you must ignore the question. If the witness did not answer, you must not guess what he or she might have said or why I sustained the objection."

"Absent some contrary indication in the record, we presume the jury follows its instructions [citations] 'and that its verdict reflects the legal limitations those instructions imposed' [citation]." (*Cassim*, *supra*, 33 Cal.4th at pp. 803–804.) Plaintiff challenges information contained in an attorney's question to a witness. The trial court instructed that questions are not evidence. The trial court sustained an objection to the question before the witness answered; it instructed the jury not to guess what a witness might have said if an objection had not been sustained. We presume the jury followed the instructions and disregarded the improper question.

Plaintiff does not cite anything in the record that suggests the jury ignored the instructions and considered the information in the question as established or true. He simply asserts "[i]t is reasonable to conclude that the jury's verdict was polluted by this inflammatory unsubstantiated information." We cannot simply make that assumption.

The trial court also denied plaintiff's motion for new trial, which was based in part on the same allegations of misconduct. The trial court was in the best position to evaluate the effect of the alleged misconduct and determine whether it resulted in prejudice. (*Grimshaw v. Ford Motor Co*. (1981) 119 Cal.App.3d 757, 794, disapproved on another ground in *Kim v. Toyota Motor Corp*. (2018) 6 Cal.5th 21, 38, fn. 6.) " 'A trial judge is in a better position than an appellate court to determine whether a verdict resulted wholly, or in part, from the asserted misconduct of counsel and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong.' " (*Stevens v. Parke, Davis & Co*. (1973) 9 Cal.3d 51, 72.) The trial court determined, in choosing not to cite defense counsel for misconduct and in denying the motion for new

trial, that no prejudicial misconduct occurred. That determination is not plainly wrong. We conclude plaintiff failed to demonstrate that defense counsel committed prejudicial misconduct that warrants reversal and retrial.

## IV.    Costs

Plaintiff's final argument is that, if the judgment is reversed on the issue of mitigation of damages, and a new judgment is entered without a reduction in damages based on failure to mitigate, or a retrial of the mitigation of damages issue is ordered, then the order awarding defendant costs must also be reversed and redetermined. Because we have not found grounds for reversal or modification of the judgment, plaintiff's argument does not establish any basis for a reversal of the award of costs.

## DISPOSITION

The judgment is affirmed. Defendant is entitled to his costs on appeal.


HILL, P.J.

WE CONCUR:


SMITH, J.


DE SANTOS, J.