Filed 1/23/2026 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of TARA STARR and THOMAS STARR. | |
| TARA STARR,<br>    Appellant,<br>v.<br>THOMAS STARR,<br>    Respondent. | A172153<br><br>(Contra Costa County<br>Super. Ct. No. MSD2004180 ) |

BY THE COURT:

It is ordered that the opinion filed herein on January 22, 2026, be modified as follows:

1. On page 8, in the second sentence of the second full paragraph, the word "plus" is added following the ellipse, so the sentence reads:

    Radcliffe further asserted that "there was no need to file a request to file a second amended petition" because Tara's position was declared "under penalty of perjury via the [request for order to bifurcate the trial] . . . plus the Joint Case Management Conference Statement filed July 19, 2022" and because "[Thomas's] counsel acknowledged that the date of separation was in dispute and agreed, on [Thomas's] behalf, to try this issue as a preliminary issue."

2. The sentence and citation that spans pages 10 and 11 is deleted and the following language is inserted in its place:

Because the substance of Tara's pleading is undisputed, we view the question whether her allegation constitutes a judicial admission as a legal issue subject to de novo review. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

3. On page 11, in the citation following the last sentence on the page, the pin citation "451" is changed to "452" so that the citation reads:

   (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452 (*Barsegian*).)

4. On page 12, in the first sentence of the first full paragraph, the language "Proc. 6th Plead" is changed to "Procedure (6th ed. 2021) Pleading" so that the citation reads:

   (4 Witkin, Cal. Procedure (6th ed. 2021) Pleading, § 467)

5. On page 12, in the citation following the second sentence of the first full paragraph, the pin citation "451" is changed to "452" so that the citation reads:

   (*Barsegian, supra,* 215 Cal.App.4th at p. 452.)

6. On page 16, in the citation following the second sentence of the last paragraph, the pin citation "1256" is changed to "1256–1257" so that the citation reads:

   (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1256–1257.)

7. On page 16, in the citation following the last sentence of the last paragraph, the language "*Ibid.*" is changed to "*Id.* at p. 1257" so the citation now reads:

   (*Id.* at p. 1257.)

There is no change in the judgment.


Date: _____1/23/2026_____          _____Brown_____, P. J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of TARA STARR and THOMAS STARR. | |
| TARA STARR,<br>    Appellant,<br>v.<br>THOMAS STARR,<br>    Respondent. | A172153<br><br>(Contra Costa County<br>Super. Ct. No. MSD2004180 ) |

Tara Starr petitioned to dissolve her marriage to Thomas Starr.[1]  At the start of a bifurcated trial to determine whether they separated in 2012 (as Tara contended) or 2020 (as Thomas contended), the trial court sua sponte offered its tentative view that there was no controversy because Tara was bound by the allegation in her amended petition that the date of separation was June 2, 2020.  Given Tara's failure to amend the petition again to allege a different date, the court said it did not believe she was entitled to argue that the parties separated in 2012, notwithstanding that she had urged that date in subsequent filings and the parties' trial briefs had treated it as the operative allegation.  The court then asked why Thomas had not raised the pleading issue, and his counsel answered that "we didn't actually look to verify what [Tara's] last pleaded date of separation was" and

---

[1] As do the parties in their briefs, we refer to the parties by first name for clarity, intending no disrespect.

Tara had been "consistent in her beating the drum of an entirely different story than what is in . . . the pleadings." His counsel added that Thomas alleged a separation date of September 15, 2020, so there was still a disputed issue for trial even if Tara was bound by the June 2020 date alleged in her amended petition.

In response, the court first suggested it might permit Tara to argue the 2012 date if Thomas insisted on a trial to decide whether his proposed September date was correct. It then indicated that it would hold Tara to June 2, 2020 regardless, but asked whether the parties were ready to offer evidence limited to the three-month period between June and September 2020 when they had prepared for a trial addressing the eight-year gulf between 2012 and 2020. After a further colloquy in which Tara's counsel said he would request a continuance, Thomas's counsel said that Thomas would accept a separation date of June 2, 2020, which the court then adopted.

This appeal follows Tara's unsuccessful motion to set aside the court's order. We conclude that the circumstances here did not warrant treating the separation date alleged in the amended petition—a date that Thomas did not accept until the last minute—as a judicial admission by which Tara was bound. We therefore reverse, but deny Tara's request that we order the matter assigned to a different judge on remand.

## BACKGROUND

In December 2020, Tara filed a petition for dissolution in pro per, although Tara later declared that she prepared the original petition with advice of counsel, K.G. In her original petition, Tara alleged that the date of separation was March 20, 2009. Thomas filed a response and specified September 15, 2020 as the date of separation.

2

In early 2021, Tara engaged Fox & Bank as counsel. In June 2021, the parties stipulated that Tara could file an amended dissolution petition and that Thomas's original response would serve as his response to the amended petition. The amended petition alleged that the date of separation was June 2, 2020.

In 2022, Tara substituted Lisa Radcliffe as her counsel. Tara subsequently filed a request for an order to bifurcate trial on three discrete issues: enforcement of a marital agreement, Tara's breach of fiduciary duty and sanctions claims, and the date of separation. In her declaration supporting the request for order, Tara attested that counsel had advised her to allege a separation date of 2009 in her original petition. Tara further stated that she "was advised to amend [her] petition to state that 2020 was the year [she and Thomas] separated to lessen the expense of litigation." Tara then asserted that the separation date was "in 2012" and that her therapist would "be able to confirm that [Tara] intended to terminate the marriage to [Thomas] in 2012 and acted in furtherance of that understanding by physically separating [herself] from him in all possible manners." Tara accordingly requested that the trial court "make the determination of the date of separation of 2012 and the character of all [her] property acquired by [her] during the marriage."[2]

In July 2022, the parties filed a joint case management statement, which requested that several preliminary issues be tried in the first part of a

---

[2] Tara also filed a request to bifurcate and terminate marital status as of the hearing set for September 30, 2022. In a supporting declaration, Tara stated that the "date of separation [was] in 2012 at best for [Thomas]." The hearing took place on December 21, 2022, which became the date the couple's marital status ended pursuant to a bifurcated dissolution judgment in January 2023.

3

bifurcated trial, including "[Tara's] claim that the date of separation [was] in 2012." The Honorable Leslie G. Landau set a trial on the preliminary issues, including the separation date.

A month later, Tara engaged new counsel, M.C. In her trial brief, Tara alleged the date of separation was October 15, 2012. In his trial brief, Thomas acknowledged the parties' dispute over the date of separation and Tara's allegation that the date was in 2012. He contended the date was September 20, 2020. Tara and Thomas each alleged various facts in support of their competing allegations.

After multiple continuances, trial proceeded on January 3, 2023 in front of Judge Landau on two issues: the enforceability of a marital contract and the date of separation. However, the single day of trial was insufficient to address both issues, so the trial was continued again.

In July 2023, the trial court held a trial readiness conference. In the interim, Tara had retained new counsel—J.R.—who requested a further continuance. After hearing argument, the court bifurcated the issue of the marital contract's enforceability, calendared "the matter 'to set' the continued court trial date," and reassigned the case to the Honorable Palvir Shoker effective in August 2023.[3]

In September 2023, Judge Shoker held a hearing to set a date for the continued date-of-separation trial. The minute order reflected that "COUNSEL INFORM[ED] THE COURT THAT THE DATE OF SEPARATION IS AT ISSUE." The court set a mandatory settlement conference for November 2023, and the parties submitted mandatory

---

[3] In a decision issued at the end of July 2023, Judge Landau ruled that the marital contract was not enforceable.

4

settlement conference statements laying out their dispute over the date of separation.

The settlement conference was continued to March 2024 and Tara submitted an amended statement in which she alleged that the date of separation was October 20, 2012. Thomas submitted a statement in which he asserted the separation date was September 17, 2020. The parties did not settle, and the court set the continued trial for July 2024.

A month prior to the trial, Tara substituted C.L. as her new counsel. In her trial brief, Tara asked the court to find a date of separation in August 2010 or, alternatively, March 8, 2012 or "at the very latest, on August 26, 2012." In his trial brief, Thomas disputed Tara's "claim[] the parties separated in 2012" and maintained that "the date of separation was September 17, 2020."

As noted above, Judge Shoker started the July 2024 hearing by announcing a tentative decision based on a pleading issue the parties had not raised, stating that "the date of separation is June 2nd, 2020, based on [Tara's] Amended Petition." Acknowledging that "[n]obody's mentioned it," the court asked for argument on "why June 2nd, 2020, should not be date of separation as [Tara] asked the Court."

Tara's counsel argued that the amended petition reflected a "simple error" made by Tara's prior counsel that the date of separation was the date the couple stopped living together.[4] The court responded that it could

---

[4] Tara writes that prior counsel "presumably relied on *In re Marriage of Davis* (2015) 61 Cal.4th 846, which held that spouses must live in separate residences to be considered separated, without realizing that, on January 1, 2020, the Legislature expressly abrogated *Davis* so that living in separate residences is no longer an indispensable prerequisite to establish the legal date of separation. (Fam. Code, § 70, subd. (c).)"

"understand if that error had happened [a] few months ago," reasoning that such a mistake may happen after new counsel is retained. However, the court expressed skepticism that the amended petition contained a mistake because there had "been a parade of attorneys" and "[n]o one filed anything with the Court to correct that mistake." Tara's counsel countered that Tara had been maintaining the date of separation was 2012 "for quite some time" and stated that he had been under the impression that prior counsel had filed a subsequent amended petition to that effect. He then offered "to file that amended petition" immediately.

The trial court was unpersuaded. It viewed the parties' stipulation allowing Tara to change the date of separation "closer to what [Thomas] was claiming" as evidence that the parties came "to some sort of meeting of minds." For that reason, the court "[did not] buy that [Tara] didn't understand what that date of separation means." However, the court conceded that Tara "definitely conducted herself under the impression that this [was] still a live issue" and that Thomas too had "prepar[ed] for [the] trial under the assumption that this [was] a live issue."

Embracing the issue raised by the court, Thomas's counsel characterized Tara's pleading allegation as a "judicial admission" and stated that the amended petition was an exhibit she had planned to present. Thomas's counsel contended that Tara's position was "on file with the Court," which was therefore "dispositive of this as a legal matter." His counsel further argued that it did not matter whether Thomas was aware of what Tara's operative pleading alleged or whether he was prejudiced because "the Court has to accept what's in the pleading as true." However, his counsel stated that "all the counsel who have participated" had "maintained the intellectual position" that "if [they] tried these three bifurcated issues,

6

perhaps [they] could break the logjam [of other contested issues]" but that the approach was not "working so far."

Tara's counsel again offered to file an amended petition "if this [was] a procedural issue." But the trial court said it was no longer a procedural issue because the case was beyond the discovery stage. The court further stated that it "cannot just throw the statutes out the window because these are her moving papers."

After a recess, the trial court explained there was "no controversy between the allegations and the response." It noted that Tara had a right to "have her day in court" but there was also a countervailing need to weigh Thomas's interests and not "disregard" the pleadings to give Tara "another opportunity." The court then restated its view that the parties' stipulation allowing Tara to file the amended petition represented "some sort of meeting of the minds" and that Tara "had plenty of opportunity to correct" the amended petition. Recognizing, however, that Thomas's pleading alleged that the separation date was September 15, 2020, the court explained: "Per the Stipulation, [Thomas] said he is going to remain with the same Response, so that's why I'm not changing the date. The year will be 2020. The date is as in the Amended Petition, June 2nd, 2020."

However, Thomas's counsel requested that trial proceed over whether the separation date was in June or September of 2020. His counsel argued that the "[separation date] issue was squarely put in controversy by the same pleadings" that foreclosed Tara's ability to argue a different separation date from the one alleged in her pleading.

The trial court agreed and said it was willing to go forward with a trial so long as the parties were held to the dates alleged in their respective pleadings, asking, "Do you have evidence that . . . only address[es] those

7

months?"  After Tara's counsel said Tara would "have to request a continuance on this issue," Thomas then decided to "accept[] the June date," dispensing with the need for trial.  The court confirmed its ruling.

Following the July 2024 hearing, Tara filed a request for order to "[s]et aside" the date-of-separation order.  In her supporting declaration, she stated that her attorney at Fox & Bank advised her to "use the date [she] moved out of the marital residence for the date of separation, as that would make litigation more affordable."  Tara further declared that Radcliffe—her subsequent former attorney—advised her that the date of separation was in March 2012 but did not advise her to amend her pleading.  According to Tara, Radcliffe only advised her to request bifurcation of the date-of-separation issue.  In her memorandum in support of her request to set aside the order, Tara asked the court to allow her to file an attached second amended dissolution petition that would allege a March 8, 2012 separation date.

Radcliffe also filed a declaration supporting Tara's request for order, reiterating Tara's version of events.  Radcliffe further asserted that "there was no need to file a request to file a second amended petition" because Tara's position was declared "under penalty of perjury via the [request for order to bifurcate the trial] . . . the Joint Case Management Conference Statement filed July 19, 2022" and because "[Thomas's] counsel acknowledged that the date of separation was in dispute and agreed, on [Thomas's] behalf, to try this issue as a preliminary issue."

At the hearing on Tara's request to set aside the order, the trial court commented that Tara had failed to put forward any new evidence or argument.  In its view, Tara's filings confirmed that her date of separation allegation in the amended petition "was a litigation strategy" pursued with the "assistance of counsel."

8

Tara's counsel urged that there were "due process" concerns because, while Thomas had "notice" of Tara's position, both parties had been "surprised" by the court's sua sponte ruling. Counsel further argued that, in contrast to an admission of fact made in a cross-complaint and in requests for admissions, "[f]iling an amended petition is not a judicial admission."

The trial court declined to set aside its order. It found that Tara's amended petition was "a well-thought-out legal strategy" and not a mistake. The court continued: "that's what I'm bound by. That is the petition; that's the moving papers as far as the trial is concerned. And I tried to balance this last time, as well, that I'm trying to balance her ability to have her day in court, and also the other side, what is the prejudice to the other side? And those are the things that I need to weigh." Expounding on the prejudice to Thomas, the court stated: "[Thomas's] attorney should have raised [the issue] and come to court long before they spent their money preparing for the trial. I am not concerned about opposing attorney [sic]; I am concerned about the parties here. Both parties have incurred a lot of attorneys' fees, and the least their attorneys could have done was looked to see what they're here in trial for."

Tara's counsel pressed why the parties' joint case management statement did not demonstrate an "agreement" that the date of separation was at issue. The trial court responded that Tara's declaration disclosed that she sought to lower her litigation costs, the stipulation demonstrated the sides "had a meeting of mind," and "[Tara] filed an amended petition, signed it under penalty of perjury, and that's the document that's holding."

The trial court entered the relevant findings and order, and certified the issue for immediate appellate review.

## DISCUSSION

Tara challenges the trial court's date-of-separation order, arguing that the court erred in finding her pleading allegation to be binding, or alternatively that it erred in declining to allow her to amend her pleading to conform to what the parties themselves had been treating as the operative allegation. She also asserts that the interests of justice require further proceedings to be conducted before a new trial judge.

## I.

The trial court did not specify the doctrinal basis for its conclusion that Tara was bound by the date of separation alleged in her amended petition.[5] Tara posits three possible rationales: (i) there was no justiciable controversy because unspecified statutory law bound the court to the parties' pleadings; (ii) the allegation in her amended petition constituted a judicial admission; or (iii) Tara was judicially estopped from introducing evidence contrary to her pleadings. Her opening brief argues that none of these theories can support the court's ruling, but Thomas responds only that the court adopted his counsel's framing that the alleged date of separation in the amended petition constituted a judicial admission, and he does not seek to defend the ruling on any other basis. Although we review the correctness of a trial court's ruling rather than the reasons given for it (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568), our review is limited to contentions raised in the briefs (*Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 394). We therefore focus here on whether the court correctly treated Tara's allegation in the amended petition as a judicial admission. The legal significance of the

---

[5] Tara's counsel asked the court at different points if it was relying on a particular case or statute, but the court did not identify any authority.

pleadings is a legal question that we consider de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

In a marital dissolution proceeding, the petition and response are considered pleadings. (Cal. Rules of Court, rule 5.74.) " 'The admission of fact in a pleading is a 'judicial admission.' " (*In re Marriage of V.S. & V.K.* (2023) 97 Cal.App.5th 219, 228 (*V.S.*).) " ' "An admission in the pleadings is not treated procedurally as evidence; i.e., the pleading need not (and should not) be offered in evidence, but may be commented on in argument and relied on as part of the case. And it is fundamentally different from evidence: It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues. Under the doctrine of 'conclusiveness of pleadings,' a pleader is bound by well pleaded material allegations or by failure to deny well pleaded material allegations." ' " (*Id.* at pp. 228–229.) "Because an admission in the pleadings forbids the consideration of contrary evidence, any discussion of such evidence is irrelevant and immaterial." (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271 (*Valerio*).)

Tara initially argues that the separation date alleged in the amended petition is a mixed question of fact and law to which the judicial admission doctrine does not apply. (*V.S., supra*, 97 Cal.App.5th at p. 229.) We are skeptical of this argument (see *In re Marriage of Lee & Lin* (2019) 41 Cal.App.5th 698, 702; *In re Marriage of Manfer* (2006) 144 Cal.App.4th 925, 930), but need not resolve the question definitively because, even assuming the allegation is properly treated as one of fact, "not every factual allegation in a complaint automatically constitutes a judicial admission." (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 451 (*Barsegian*).)

11

Here, we conclude that the circumstances did not warrant treating Tara's allegation as a judicial admission.

A plaintiff's affirmative pleading allegation may constitute a judicial admission (4 Witkin, Cal. Proc. 6th Plead § 467), but the doctrine presupposes that the adverse party does not *contradict* the allegation. "[A] judicial admission is ordinarily *a factual allegation by one party that is admitted by the opposing party*. The factual allegation is removed from the issues in the litigation because the parties *agree* as to its truth." (*Barsegian*, *supra*, 215 Cal.App.4th at p. 451.) "A judicial admission is therefore conclusive both as to the admitting party *and as to that party's opponent*. [Citation.] Thus, if a factual allegation is treated as a judicial admission, then neither party may attempt to contradict it—the admitted fact is effectively conceded *by both sides*." (*Ibid.*; see *The Travelers Indemnity Co. of Connecticut v. Navigators Specialty Ins. Co.* (2021) 70 Cal.App.5th 341, 361 [plaintiff-insurer's allegation that it did not have a duty to defend was not a judicial admission because "far from conceding that [plaintiff] owed no duty to defend [third party insured], [defendant] takes the *opposite* position, contending that [plaintiff] owed a duty to defend, which cannot be extinguished on a retroactive basis"]; *Trembley v. Benedetti* (1955) 134 Cal.App.2d 553, 557 ["If a party's testimony is to be treated as a judicial admission [under the quasi-judicial admission doctrine] it must be accepted as true by his adversary. If his adversary elects to contradict it by testimony of his own he cannot at the same time insist that his opponent is bound by it"]; *Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 132 [a party may be held to the truth of a factual allegation "as long as the opposing party is not contesting" it].)

12

In *Barsegian*, for example, the plaintiff filed suit against defendants who had transacted with her to sell and lease back real estate but subsequently failed to pay rent. (*Barsegian*, *supra*, 215 Cal.App.4th at p. 449.) The plaintiff amended her complaint to add "the Kessler defendants," who had represented her in the real estate transaction. (*Ibid.*) Her operative complaint alleged that " 'each of the defendants was the principal, partner, co-venturer, agent . . . of each of the other defendants.' " (*Id.* at p. 451.) The Kessler defendants filed a motion for arbitration on the basis of their engagement agreement. (*Id.* at p. 449.) Despite the presence of an arbitration clause in their lease agreement, the other defendants did not move for arbitration, but they did state that they would consent to arbitration if the Kessler defendants' motion succeeded. (*Id.* at p. 450.) The trial court denied the motion, and the Kessler defendants appealed. (*Ibid.*) They argued that the plaintiff's mutual agency allegation constituted a binding judicial admission and, because all defendants were therefore agents of each other, they were all entitled to enforce each other's arbitration agreements. (*Id.* at p. 451.) The court of appeal disagreed. After explaining that "a judicial admission is ordinarily *a factual allegation by one party that is admitted by the opposing party*," the court noted that the Kessler defendants "wish[ed] to hold [plaintiff] to the mutual agency allegation only for purposes of the motion to compel arbitration" yet "they wish[ed] to retain the right to prove to the arbitrator that the allegation [was] false." (*Id.* at pp. 452–453.) Thus, because the Kessler defendants did not "treat the mutual agency allegation as a judicial admission (because they [did] not admit the truth of [plaintiff's] allegation)," the court also declined to "treat it as such." (*Id.* at p. 453.)

It is true that, unlike in *Barsegian*, in this case Thomas—after an extended colloquy with the court—changed course at the last minute and accepted the date alleged in the amended petition.  But during that colloquy, the court made clear that it would hold Tara to the date alleged in her amended petition whether or not Thomas accepted it, and Thomas's counsel expressly argued that Tara was bound by her pleading allegation even as Thomas sought to controvert it.  That approach is contrary to *Barsegian* and the other authorities cited above.  Although the parties have not identified a case that is on all fours with this one, we are unpersuaded that Thomas's belated on-the-fly accession—after it appeared the parties were unprepared to go forward with a trial limited to the three-month period the court was willing to entertain—should bind Tara to the date alleged in the amended petition.[6]

After the petition was amended, neither party conducted the litigation as if there had been a meeting of the minds that the date of separation fell sometime in 2020.  The parties' stipulation allowing Tara to amend her pleading allegation was not an agreement about the substance of her new

---

[6] Thomas places principal reliance on *Valerio, supra*, 103 Cal.App.4th 1264 and *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, disapproved on another ground in *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 196, fn. 8, but neither of those cases establishes that Tara's allegation, which Thomas's answer contested, should be treated as a judicial admission.  In *Valerio*, the plaintiff admitted the existence of the contract in his answer to the defendant's cross-complaint, so the admission, established by the answer, was uncontroverted when made.  (*Valerio*, at p. 1271.)  In *Thurman*, the relevant allegation was contained in the operative complaint, but there is no suggestion that it had ever been contested by the defendants.  (*Thurman*, at p. 1154.)  On the contrary, the defendants relied on the allegation from the outset in their statutory offer to compromise under Code of Civil Procedure section 998, and raised the issue before trial in a motion in limine.  (*Thurman,* at pp. 1157–1158.)

allegation. Whatever benefit the trial court concluded Tara sought to achieve by the amendment, the record shows she never pursued it, and Thomas never took any action in reliance on it. He knew no later than May 2022 that Tara intended to assert a 2012 date of separation at trial. Rather than oppose Tara's request to bifurcate trial on the basis that the issue was settled by judicial admission, Thomas consented to a joint statement of contested issues for trial, including "Petitioner's claim that the date of separation is in 2012." Moreover, in his first trial brief, Thomas did not argue that the date was an admitted fact conclusive to both parties. Instead, he asserted that he would "show both [evidentiary] factors [regarding a marital relationship] were present in August 2020. As a result, the court should find the parties' date of separation is September 20, 2020." Thomas maintained that the issue was contested throughout the proceedings, including in August 2023 when the case was reassigned to Judge Shoker, in his November 2023 settlement conference statement, in his March 2024 settlement conference statement, and in his July 2024 trial brief. He never acted as if the date alleged in the amended petition were conclusive as to him, and he appeared for trial intending to argue a date of separation in September 2020. Finally, although the trial court observed that it was necessary to consider prejudice, it found prejudice to Thomas only in the sense that his own attorney had hitherto failed to identify or argue the pleading issue the court itself raised on the morning of trial. Thus, the prejudice to Thomas that the court identified was not caused *by Tara*. Taking all these factors into consideration, we conclude

that the court erred by treating the date alleged in the amended petition as a judicial admission.[7]

## II.

Although we reverse the trial court's ruling, we are unconvinced by Tara's argument that we should remand with instructions that the case be assigned to a different trial judge.

Code of Civil Procedure section 170.1, subdivision (c) requires an appellate court, upon a party's request, to "consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." Disqualification may be necessary where the presiding judge " 'indicate[d] an animus inconsistent with judicial objectivity' " or displayed " 'a whimsical disregard' " for the law. (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1256.) Disqualification is also appropriate " '[w]here the average person could well entertain doubt whether the trial judge was impartial.' " (*Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 1009.) However, this statutory power " 'should be used sparingly.' " (*Peracchi*, at p. 1256.) " '[M]ere judicial error' " is an insufficient ground for disqualification. (*Ibid.*)

---

[7] We therefore need not resolve Tara's claim that the court abused its discretion by denying her motion to set aside its order or her request to amend her pleading, but we note that "[a] judicial admission in a pleading is not set in stone . . . because '[t]he trial judge . . . has discretion to relieve a party from the effects of a judicial admission by permitting amendment of a pleading[.]' (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 454, p. 587.) In addition, in certain contexts a party may be permitted to introduce evidence contradicting the party's own allegations even in the absence of an amendment." (*Barsegian, supra*, 215 Cal.App.4th at p. 452, fn. 2.)

Based on the record, the average person would not doubt Judge Shoker's impartiality. Tara cites no authority for the proposition that it was inappropriate for the trial court to raise its concern sua sponte that the pleadings constituted binding judicial admissions. The court's ruling did not constitute advocacy for Thomas. Tara's failure to amend her pleadings raised a novel question whether her allegation qualified as a judicial admission.

Tara's contention that Judge Shoker violated her constitutional right to due process by refusing to allow Tara to present any evidence overlooks the nature of Judge Shoker's error. As discussed above, "an admission in the pleadings forbids the consideration of contrary evidence." (*Valerio*, *supra*, 103 Cal.App.4th at p. 1271.) Tara's authorities are inapposite. Unlike in *Moore v. California Minerals Products Corp.* (1953) 115 Cal.App.2d 834, 836, Tara's counsel was given the opportunity to defend the pleading. And unlike the trial judge in *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291, Judge Shoker did not "display[] ill-disguised impatience," "repeatedly threaten[] a mistrial if the proceedings were not concluded quickly enough," or "abruptly end[] the trial before [husband] had finished his presentation, cutting off any opportunity for rebuttal evidence." Rather, Judge Shoker reached a legal conclusion, albeit erroneous, that the separation date alleged in the amended petition constituted a judicial admission by which Tara was bound.

Finally, none of the "comments" that Tara points to betray bias or impartiality. The trial court's statements about Tara's credibility were proper in the context of evaluating whether to relieve Tara of her purported judicial admission. (Cf. *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 623 [holding that mandatory relief under section 473 "involves an assessment of credibility by the trial court" and that the trial

17

court's disbelief in counsel's sworn statement was supported by the action's procedural history].)  Rather than having prejudged the merits of the trial, Judge Shoker's comments reflect her evaluation of whether the amended petition reflected a mistake.  Unlike the trial judge in *Haluck v. Ricoh Electronics, Inc., supra,*151 Cal.App.4th at pages 1003–1008, on which Tara relies, Judge Shoker did not repeatedly exhibit a "lack of courtesy and decorum" through "demeaning[,]" "belittl[ing,]" and "glaringly inappropriate" conduct.

## DISPOSITION

The order is reversed.  The case is remanded for further proceedings to redetermine the date of separation.  Tara is entitled to costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

18

| | |
|---|---|
| Trial Court: | Superior Court of Contra Costa County |
| Trial Judge: | Honorable Palvir Shoker |
| Counsel for Petitioner and Appellant: | Complex Appellate Litigation Group, Robert A. Roth, Kelly A. Woodruff |
| Counsel for Defendant and Respondent: | Katz Appellate Law, Paul Katz |